## THE SECRETARY *v.* McGARRAHAN.

1. The Commissioner of the Land Office cannot properly grant a patent under the 7th section of the act of July, 1866, "to quiet land titles in California," unless the purchaser bring himself by affirmative proofs within the terms of the section.
2. The granting of a patent for lands in cases where proofs, hearing, and decision are required, and where the exercise of judgment and discretion is thus necessary, is not a matter wherein the action of the Department of the Interior is subject to re-examination by the Supreme Court of the District.
3. A judgment in mandamus ordering the performance of an official duty against an officer, as if yet in office, when in fact he had gone out after service of the writ, and before the judgment is void.    Such a judgment cannot be executed against his successor.
4. Mandamus to compel either the Commissioner of the General Land Office, or the Secretary of the Interior, to issue a patent, cannot be sustained under statutes as now existing.

ERROR to the Supreme Court of the District of Columbia.

On the 3d of December, 1868, one McGarrahan, the alleged purchaser of the claim of a certain Gomez, to a tract of land in California, known as the *Panoche Grande*, filed a petition in the Supreme Court of the District of Columbia

praying that a writ of mandamus might be issued, command-ing the Hon. O. H. Browning, Secretary of the Interior, to issue, or cause to be issued, to him, McGarrahan, a patent for the land alleged to be embraced by that claim.

The claim of Gomez to this land had been decided in this court to be signally fraudulent and void.*   The right of McGarrahan to demand and receive such a patent as he asked the Supreme Court of the District to order, was placed in his petition upon the provisions of the act of July 23d, 1866, entitled " An act to quiet land titles in California."†

" Section 7.  That where persons, *in good faith and for a valuable consideration,* have purchased lands of Mexican grantees or as-signs, which grants have subsequently been rejected, or where the lands so purchased have been excluded from the final survey of any Mexican grant, and have *used, improved, and continued in the actual possession of the same,* according to the lines of their original purchase, *and where no adverse right or title* (except of the United States) exists, such purchaser may purchase the same, after having such land surveyed under existing laws, at the minimum price established by law, upon first making proof of the facts required in this section, *under regulations to be pro-vided by the Commissioner of the General Land Office,* &c. : *Provided, that the right to purchase herein given shall not extend to lands con-taining mines of gold, silver, copper, or cinnabar.*"

A subsequent act disposes, in a different way, of lands con-taining mines of gold, silver, copper, or cinnabar.

The petition of McGarrahan, not averring that proof of the facts had been made under the regulations of the Com-missioner of the General Land Office, and without averring that the lands in question were *not* mineral lands, containing mines, &c., alleged simply that the facts stated in his appli-cation were proved, by the relator, to Mr. Browning, the Secretary of the Interior, and that he had found, from the proofs, that the relator, in good faith and for a valuable con-sideration, purchased the lands from Gomez.   Upon the

---

* 23 Howard, 326 ; 1 Wallace, 698 ; 3 Id. 752.   † 14 Stat. at Large, 220.

showing made in this petition, the Supreme Court of this District, without notice to Mr. Browning, the Secretary of the Interior, ordered, on the 7th of December, a rule to issue, commanding him to show cause, on the 3d Monday of January, 1869, before the court sitting in general term, why the writ of mandamus prayed for should not issue. On the 26th of January, Mr. Browning filed a return, in the nature of a plea to the jurisdiction of the court, submitting that the court had not jurisdiction of the subject-matter of the case, and could not grant the writ prayed for:

1st. Because the subject-matter was of purely executive cognizance, resting in the judgment and discretion of executive officers, in the ordinary discharge of their official duties.

2d. Because the subject-matter was one in which judgment and discretion were to be exercised; and

3d. Because the issuing of patents for lands was, by statute, the duty of the President of the United States.

On the 8th of July a writ of mandamus was issued, directed to Mr. Browning, *or to his successor in office*, commanding him to convey to McGarrahan the land in question. Four months before, Mr. Browning had retired from the office of Secretary of the Interior, and had been succeeded by the now present incumbent, the Hon. J. D. Cox. And on the same day, the 8th of July, this writ was served upon Mr. Cox, as one of the parties named in the *alternative* judgment. No proceedings of any kind were taken upon the retirement of Mr. Browning, to revive the suit against his successor, Mr. Cox, or to make him a party, and no notice of the pendency of the case was given to him by the relator or by the court, or any requirement made of him to answer the application on its merits.

*Mr. Hoar, Attorney-General, and Mr. Ashton, special counsel, for the Secretary:*

The case presented by the record, is:

1st. A peremptory mandamus issued against the head of a department, in a suit instituted against his predecessor,

to which the incumbent had never been made, or become, a party.

2d. A peremptory mandamus awarded against the head of a department, in a case arising under laws which it is *his* duty to administer and execute, upon an *ex parte* statement of a claimant before his department, without any exhibition, on the part of the government he represents, of the truth of the matter in controversy, and without any opportunity being afforded by the court for such exhibition of the matter thus sought to be subjected to judicial determination; and

3d. A judicial order to the head of a department to issue a patent for lands, which the facts officially known to him might show to be lands that Congress had expressly excepted from the grant made in the 4th section of the act of July 23d, 1866, under which the relator claimed.

No instance of judicial usurpation of authority, so palpable, has been brought to the attention of this court.

In *Gaines* v. *Thompson*,[*] Miller, J., in delivering the opinion of the court, took occasion to review the previous adjudications upon this subject, and to expound, in terms even clearer than had been before employed, the doctrine they all enunciate, that " an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as part of his official functions."

The reports of the decisions of this court contain *eight* cases in all, in which heads of departments and other executive officers were sought to be controlled by this prerogative writ of mandamus; but in only one[†] was the attempted control sanctioned by this court. These cases came up from the district.[‡] In two of them only, the court below issued writs of mandamus. In the first, this court affirmed the judgment; and in the others it reversed the decision of the court below. Of these eight cases, one was against the Postmaster-General;[§] two were against the Secretary of

---

[*] 7 Wallace, 352.  [†] Kendall v. United States, 12 Peters, 618.

[‡] Ib., *supra;* Commissioner of Patents v. Whiteley, 4 Wallace, 522.

[§] Kendall's Case, *supra.*

the Treasury;* two against the Secretary of the Navy;† one against the Public Printer;‡ one against the Commissioner of Patents;§ and one against the Commissioner of the Land Office.||

In all of these cases the doctrine is enforced, as a fundamental principle of our political system, that the Judiciary is forbidden to interfere with the exercise of executive discretion; or, as the court expresses it,¶ the writ of mandamus lies only where there is a refusal to perform a ministerial act involving no exercise of judgment or discretion.

2. It is indisputable that the duty imposed upon the executive officers who may be charged with the execution of the statute, under which the relator claims, is not ministerial in its character, within the meaning of these authorities, but is in the highest degree *executive*, as that term is defined in *Mississippi* v. *Johnson*.**

In the case of *United States* v. *The Commissioner of the Land Office*,†† where the application was for a mandamus to compel the issuing of a patent, Nelson, J., said, the case " calls for the exercise of the *judicial functions* of the officer, and these of no ordinary character. The duty is not merely ministerial, but involves judgment and discretion, which cannot be controlled by this court."

The right of pre-emption given to the assignees of rejected Mexican grants plainly depends upon a variety of facts and conditions, which must be established to the satisfaction of and according to the rules provided by the Commissioner of the Land Office; whether they purchased in good faith, and for valuable consideration; whether they have used, improved, and continued in the possession of the land in the

---

* Reeside *v.* Walker, 11 Howard, 272; United States *v.* Guthrie, 17 Id. 284.

† Decatur *v.* Paulding, 14 Peters, 497; Brashear *v.* Mason, 6 Howard, 92.

‡ United States *v.* Seaman, 17 Howard, 230.

§ Commissioner *v.* Whiteley, 4 Wallace, 522.

|| United States *v.* Commissioner, 5 Id. 563.

¶ Commissioner of Patents *v.* Whiteley, 4 Id. 522.          ** 4 Id. 498.

†† 5 Wallace, 563; and see United States *v.* Seaman, 17 Howard, 230; Gaines *v.* Thompson, 7 Wallace, 353.

manner prescribed by the statute; whether any valid adverse title or right exists; whether the land has been properly surveyed; whether the facts have been proved "under the regulations of the Commissioner of the General Land Office;" whether the lands are within the excepted locality; and, finally, whether the lands contain mines of gold, silver, copper, or cinnabar.

3. Mr. Browning's return was intended to raise a simple question of jurisdiction upon the face of the act of July 23d, 1866. The facts of the case of the relator were not disclosed. Upon that return the court awarded a peremptory mandamus—*a final judgment upon a plea in abatement.* The court, without being informed, or requiring or desiring information, as to the actual situation of the land, assumed not only that the facts were as the statute required, in order to give a right under it, but that upon those facts nothing was left to the judgment of the Land Department, and a mere ministerial duty devolved upon it to issue a patent to the relator. It is plain that such a judgment is without warrant of law, and void.

4. Great as was the error of the court below in rendering a final judgment in this proceeding as against the defendant, Mr. Browning, its error in rendering such a judgment against his successor, Mr. Cox, was still more flagrant.

The imperative rule of the law of mandamus is that, previously to the making of the application to the court for a writ to command the performance of any particular act, an express and distinct *demand* or request to perform it must have been made by the prosecutor to the *defendant,* who must have refused to comply with such demand, either in direct terms or by conduct from which a refusal can be conclusively implied.*

In addition, the doctrine of this court has limited the power of the courts to issue this writ, to cases of acts required by law of the individual rather than of the officer—a doctrine explained by the court in *United States* v. *Guthrie,* and in *Kendall's Case.*

---

* Tapping on Mandamus, 283.

It might well be in any case, that while a particular in-cumbent had refused to perform an act required by law, his successor would not refuse, upon proper demand being made.   The law, therefore, entitles the *successor* to the same opportunity to comply or refuse, as was given to the incum-bent against whom the suit is brought.

5.  This court has, in effect, determined that the duty and power of issuing patents does not devolve upon the Land Department, or upon the Secretary of the Interior, who is vested with supervisory and appellate authority over that department, in such a sense as to render the Commissioner of the Land Office, or the Secretary of the Interior, liable in any case to be proceeded against in this form of action. In *United States* v. *Commissioner of Land Office*,* Nelson, J., in delivering the opinion of the court, took occasion to say, that " patents are to be signed by the *President* in person, or in his name by a secretary under his direction, and counter-signed by the Recorder of the General Land Office."†

*Mr. Merriman, contra:*

The petition sets forth the facts entitling the relator to a patent for the land claimed, and that these facts had been proven to the satisfaction of the Secretary of the Interior; that those facts had been determined by him, but that the secretary refused to issue the patent without any just cause. This was not denied by the secretary, but he simply inter-posed a denial of the jurisdiction of the court in the matter.

Was the denial well founded ?   The General Land Office is a part and parcel of the Department of the Interior, and its officers are subject to the directions of the secretary of that department.   It is his duty to see that they perform their duties.   It is their duty to issue patents for lands to persons by law entitled to them.   To one officer is delegated the duty of engrossing, recording, certifying, and affixing

---

\* Act March 2d, 1833, 4 Stat. at Large, 663; Act March 3d, 1841, 5 Id. 417.

† 5 Wallace, 563.

the seal of the Land Office, and issuing such patents; to another the duty of signing the name of the President.

The entire duties of issuing patents are performed by certain specified officers.   The President is required to perform no personal act in the matter, and indeed the same language of the statute is used in reference to the commissioner as to the secretary for signing patents, each to act under the direction of the President of the United States.   The rule being held that the commissioner is subject to the supervision of the head of the department, the same reason wi apply to the application of the rule to the subordinate anc. strictly ministerial officer who affixes the signature to the patent.

In this case the secretary, instead of directing his subordinates to perform the duty of issuing the patents to which the relator is entitled by law, refuses entirely to do so.

Mr. Justice CLIFFORD delivered the opinion of the court.

Land grants purchased of Mexican grantees or their assigns, in good faith and for a valuable consideration, where such grants have subsequently been rejected or where the lands so purchased have been excluded from the final survey of the grant, may be purchased of the United States by such prior purchasers, after the same are surveyed under existing laws, at the minimum price established by law, in cases where there is no valid adverse private right or title; and where such prior purchasers have used, improved, and continued in the actual possession of the premises according to the tenor of their original purchase, they first making proof of those facts as required in the seventh section of the act to quiet the title to such grants, under regulations to be prescribed by the Commissioner of the General Land Office, as provided in the same section of that act.*

Annexed to that right, however, are three other conditions, one of which it becomes important to notice.   They are in the form of provisos, and the one to be noticed is that the right to purchase, as given in the body of the section,

---

* 14 Stat. at Large, 220.

" shall not extend to lands containing mines of gold, silver, copper, or cinnabar."

By the record it appears that the relator, on the fifth of October, 1858, addressed a communication to O. H. Browning, Secretary of the Interior, in which he represented that he, the relator, on the twenty-second of December, 1857, purchased of Vincente P. Gomez the rancho situated in California and known as Panoche Grande, and that the claim to the same had since been rejected by the decree of the Supreme Court reversing the decree of the District Court confirming the claim, and prayed that he, by virtue of the provision contained in the seventh section of that act, might be allowed to purchase the same of the United States, supporting his alleged right to do so by the following representations:

That the land embraced in the claim was a Mexican grant; that he purchased it of the original donee in good faith and for a valuable consideration; that the land, since the claim was rejected, has been regularly surveyed under existing laws: that there is no valid adverse private right or title to the same, and that he has continued in the actual possession of the tract since the claim was rejected, as required by law; but he did not allege that the land did not contain mines of gold, silver, copper, or cinnabar, nor did he offer any other proof of the facts set forth than what is contained in the exhibits annexed to the communication.

Prior to the date of that paper, to wit, on the fourteenth of August preceding, the Secretary of the Interior addressed an official letter upon the subject to the Commissioner of the General Land Office, in which he adverted to the fact that a bill was pending in the Senate relating to the claim, and stated that in his judgment it would be highly improper for the department to do anything to affect the title to the land until Congress should dispose of the claim. Pursuant to that view he, at the same time, directed the commissioner to instruct the local officers to suspend action in all such cases until they should receive further orders. Correspondence ensued between the secretary and the counsel of the relator.

but the secretary, on the twenty-eighth of November follow-
ing, informed the counsel that he adhered to the views ex-
pressed in the directions which he gave to the Commissioner
of the General Land Office.

Dissatisfied with the decision of the secretary, the relator,
on the third of December, of the same year, presented a peti-
tion to the Supreme Court of this district, in which he prayed
that a mandamus might issue directing " O. H. Browning,
Secretary of the Interior," to issue or cause to be issued a
patent for the land described in the petition, and for such
other or further relief as may seem meet and proper. Ser-
vice was duly made, and on the eighth of the same month a
rule was issued commanding the secretary to show cause, on
the third Monday of January following, why the writ of
mandamus should not be issued as prayed in the petition.
He appeared, as commanded, and pleaded that the court had
no jurisdiction to grant the writ, for the following reasons:
(1.) Because the subject-matter of the petition is purely of
executive cognizance, resting in the judgment and discretion
of executive officers in the ordinary discharge of their official
duties. (2.) Because the subject-matter is one in which judg-
ment and discretion are to be exercised. (3.) Because the
issuing of patents for lands is, by the act of Congress, the
duty of the President.

On the fifth of February following the parties filed a stipu-
lation in the case, agreeing that the cause " be submitted to
the court upon briefs and arguments, and that the said court
may render its judgment in vacation as of the present term
and of the day of such submission." Submitted, as afore-
said, the case was held under advisement until the eighth of
July following, when the court, two justices signing the de-
cree, determined that the prayer of the petition be granted,
and that a writ of mandamus issue, directed to the said O.
H. Browning, Secretary of the Interior, or to his successor
in office, commanding him, upon payment of the sum therein
specified, to issue or cause to be issued to the relator a patent
from the United States of the tract of land described in his
petition.

Four months before that judgment was rendered, the Secretary of the Interior, who was the party respondent in the litigation, resigned his office, and J. D. Cox, the present Secretary of the Interior, had not only been appointed his successor, but was in the regular discharge of all its duties.

Although none of these facts are disputed, still the record shows that the writ of mandamus was addressed to the predecessor of the present incumbent, or his successor in office, and that the writ, on the eighth of July in the same year, was served on the present secretary, who was not named in the writ, was never a party to the suit, and never had any notice of the proceedings. Judgment having been rendered without notice to the present secretary, and without a hearing on his part, or any opportunity to be heard, he sued out a writ of error and removed the cause into this court.

Founded, as the proceeding in this case is, upon a claim to land which has been three times under examination in this court before the present writ of error was sued out, it is deemed necessary and proper to advert to the views expressed by the court on those occasions in respect to the validity of the claim and the means adopted to procure its confirmation. Reference to the docket entries will show that the case was first presented here at the December Term, 1858, by the claimant, as an appeal not prosecuted; and it also appears that a copy of the record having been produced by him, and the certificate of the clerk that the appeal had been duly prayed and allowed, the case on his motion was docketed and dismissed, in conformity to the ninth rule of the court, for want of prosecution. Such a proceeding when *bonâ fide* has the effect to vacate the appeal and leave the decree of the subordinate court in full force, and the docket entries also show that the mandate was issued in pursuance of that order, and that it was subsequently delivered to the assignee of the claimant.

Nothing further was done in the cause during that term, but at the succeeding term the Attorney-General filed a motion to rescind the decree of the preceding term dismissing the case, and to revoke the mandate, alleging for cause that

the decree and mandate had both been procured by misrepresentations and fraud. Affidavits were filed by the Attorney-General showing that the cause was still pending in the District Court, that no appeal had been granted, that the cause, when the claimant made his motion to docket and dismiss it, was not legally before this court. Pending that motion three motions for mandamus were filed by the claimant: First, to compel the District Court to file the mandate and to execute their decree. Second, to compel the District Court to dismiss the application of the United States to open the decree and grant a new trial. Third, to compel the Surveyor-General to survey the land confirmed to the claimant by the decree of the District Court.

Both parties were heard, and the court overruled the several motions filed by the claimant, but granted the motion of the Attorney-General, upon the ground that the allegations of the motion were fully proved.*

Attempts were subsequently made by the claimant to enjoin the clerk and district attorney from furnishing a certified copy of the record to enable the United States to appeal, but the injunction was refused, and the appeal was perfected and duly entered here; and the next step of the claimant was to file a motion to dismiss the appeal, alleging that the court had no jurisdiction of the case, but the court unanimously overruled the motion for the reasons expressed in the opinion.†

Subsequently the cause was heard upon the merits, and the court held that the claim was invalid and fraudulent, and reversed the decree of the District Court, and remanded the cause, with directions to dismiss the petition.‡

Unless, therefore, the claim of the petitioner is brought within the terms of the act of Congress referred to in his petition he has no right whatever to a patent for the land in controversy.

Suppose everything which he alleges in his petition is

---

* United States v. Gomez, 23 Howard, 330.

† Same v. Same, 1 Wallace, 690.   ‡ Same v. Gomez, 3 Id. 766

true, still it does not bring his case within the act of Congress, as the petition does not allege that the land does not contain mines of gold, silver, copper, or cinnabar; and the record furnishes evidence tending strongly to the conclusion that such an averment, if made, could not be supported, as the statement of the land commissioner is that the land embraced in the claim does contain "valuable quicksilver mines."

Mere allegation, however, is not sufficient, but the condition is that the claimant shall make proof of the facts required under regulations to be provided by the Commissioner of the General Land Office. His application to be allowed to purchase the land was made to the Secretary of the Interior, and he was as much bound to prove that the land did not contain mines of the description mentioned as he was to show that his purchase of the donee of the tract was made in good faith and for a valuable consideration, as he was not entitled to a patent if the lands contained mines of gold, silver, copper, or cinnabar, any more than if he had made the purchase in bad faith and without consideration.

Argument to show that he did not bring his case within that condition is unnecessary, as the point is clear to a demonstration. He did allege that he purchased the lands in question of the donee in good faith and for a valuable consideration, but he offered no proof of the alleged fact, except what may be inferred from the deed annexed to the petition, bearing date December 22d, 1857, and which purports to have been executed by the original claimant.

Special reference is made in the petition to the deed of release given by the occupants of the land to the relator as supporting the allegation of good faith, but it is entitled to very little weight, if any, as it bears date six years subsequent to the alleged purchase of the grant.

Evidence was exhibited in the case tending to show that the lands were surveyed subsequent to the decree of the court rejecting the claim, but it is not proved that the present claimant thereafter continued in the actual possession of the land, nor that it was free from any adverse private right or title.

Such allegations are set forth in the petition, but the record contains no proof to support the first allegation, and nothing to support the second, except what is derived from the statement of the Commissioner of the General Land Office, that no report of any individual adverse interests was found on the files of his office.   Tested solely by the merits, therefore, it is quite clear that the application of the relator could not have been properly granted, as the proofs before the department were not sufficient to warrant a decision in his favor.

Adjudged invalid and fraudulent, as the claim had been by the unanimous decision of this court, it was quite proper that the secretary should require satisfactory proof that the case as presented came within the terms of the act of Congress relied on before consenting to give the claimant the benefit of its provision; and when it appeared that the petition addressed to him was deficient in allegation, and that the proofs were insufficient in all particulars, except, perhaps, one, he was entirely justified in rejecting the application.

Evidently the case, if examined upon the merits, was not made out by the claimant, but the more decisive objection to the judgment of the court below is that the case, from its very nature, is one which was exclusively within the jurisdiction of the executive officers of the government, because it was one requiring proofs, hearing, and decision, and involved the exercise of judicial judgment and discretion, and consequently was not one where the action of the Department of the Interior is subject to re-examination by the Supreme Court of this district.

Since the decision of this court in the case of *McIntire* v. *Wood*,* it has been regarded as the settled law of the court that the Circuit Courts of the United States in the several States do not possess the power to issue writs of mandamus, except in cases in which it may be necessary to the exercise of their jurisdiction.†

Authority to that effect might doubtless be given to those courts by an act of Congress; but the insuperable difficulty

---

* 7 Cranch, 504.        † Riggs *v.* Johnson Co., 6 Wallace, 198.

at present is, that neither the Judiciary Act nor any other act of Congress has conferred upon them any such power. Antecedent to the decision of this court in the case of *Kendall* v. *The United States*,* grave doubts were entertained whether any court established by an act of Congress possessed any such jurisdiction; but the majority of this court came to the conclusion in that case, that the Circuit Court of this district might issue the writ of mandamus to an executive officer residing here, commanding him to perform a ministerial act required of him by law, and it is not denied that the court below possesses all the power in that behalf which the Circuit Court of the district possessed at that time. Subsequent decisions of this court have affirmed the same principle; but in all of the subsequent cases the principle is strictly limited to the enforcement of mere ministerial acts not involving the necessity of taking proofs, and it has never been extended to cases where controverted matters were to be judicially heard and decided by the officer to whom the writ is required to be addressed.†

Though mandamus may sometimes lie against an executive officer to compel him to perform a mere ministerial act required of him by law, yet such an officer, to whom public duties are confided by law, is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as part of his official functions.‡

Discussion of the principle, however, seems to be unnecessary, as all of the cases appear to affirm the same rule, that the writ cannot issue where discretion and judgment are to be exercised by the officer, and only in cases where the act required to be done is merely ministerial, and where the relator is without any other adequate remedy.§

Even if it could be shown that the court below possessed

---

* 12 Peters, 608.

† Decatur *v.* Paulding, 14 Peters, 497; Brashear *v.* Mason, 6 Howard, 99.

‡ Gaines *v.* Thompson, 7 Wallace, 353; Reeside *v.* Walker, 11 Howard, 289.

§ United States *v.* Seaman, 17 Howard, 230; United States *v.* Guthrie, Ib. 304; Commissioner of Patents *v.* Whiteley, 4 Wallace, 522; United States *v.* Commissioner, 5 Id. 563.

the power to issue the writ in such a case, still it is clear that the judgment in this case would be erroneous, as the case upon the merits was not submitted to the court under the stipulation.   Undoubtedly the appearance of the respondent was general, but he pleaded only to the jurisdiction of the court, and it appears that the question of jurisdiction was the only point argued and submitted for decision.   But the court decided the whole case without proofs, and without any further hearing.   Taking the record as it is exhibited, such certainly is the clear inference from it, and it is not suggested that it does not correctly represent what occurred. Assuming the record to be correct, comment upon the proceeding is unnecessary, as, in the view of this court, it is clearly erroneous.

Several other objections are also taken to the proceedings by the Attorney-General, which are equally decisive that the judgment of the court below must be reversed, one or two of which will be briefly noticed.

Service was made upon O. H. Browning, Secretary of the Interior; but the fact is conceded, or not denied, that he had resigned and gone out of office four months before the decision of the court was announced.   When he resigned, of course the suit abated, but the court gave judgment against him as if he were still in office, and decreed that the writ of mandamus should be directed to him and to his successor in the office.   Complaint may well be made by that party that he no longer possesses the power to execute the commands of the writ, and the present secretary may well complain that he is adjudged to be in default though he never refused to allow the relator to purchase the land, and that the judgment was rendered against him without notice and without any opportunity to be heard.

Notice to the defendant, actual or constructive, is essential to the jurisdiction of all courts, and the better opinion is, that a judgment rendered without notice may be shown to be void, when brought collaterally before the court as evidence.*

---

* Nations *v.* Johnson, 24 Howard, 203.

Patents for land are required to be signed by the President in person, or in his name by a secretary under his direction, and they are to be countersigned by the Recorder of the General Land Office.*

Such patents cannot be issued and delivered to any party without the signature of the President, and no proceeding to compel either the Commissioner of the General Land Office or the Secretary of the Interior to issue such a patent can be sustained while that provision of law remains unrepealed.†

Congress may so provide, and in that event it would be the duty of the secretary to carry the provision into effect; but the act of Congress referred to in the petition as the source of power in this case gives the Secretary of the Interior no authority upon the subject. On the contrary, the express provision is, that the regulations for executing the law shall be provided by the Commissioner of the General Land Office, and the better opinion is, that the application to be allowed to purchase the land embraced in such rejected claim should be made to the Commissioner, and not to the Secretary of the Interior, as the right to purchase of the United States will never vest until the land is surveyed under existing laws.

It appears by the record in this case that a survey of some kind was presented to the secretary, but whether it was one made under existing laws or not is not sufficiently shown.

Viewed in any light, the Secretary of the Interior has no original cognizance of applications of this description. He may, perhaps, as the head of the department, exercise an appellate and supervisory power over the doings of the Commissioner, but the original application should have been made to the Commissioner of the General Land Office.‡

Mr. Justice MILLER: I agree to the judgment of the court on the ground set forth by this court in the case of

---

* 4 Stat. at Large, 663; 5 Id. 417.
† United States *v.* Land Commissioner, 5 Wallace, 563.
‡ 9 Stat. at Large, 395.

*Gaines* v. *Thompson*,* that the courts have no jurisdiction to control the actions of the departments in such cases.

I do not think that the merits of the present claim were before the court, and I decline to express any opinion upon it.

JUDGMENT REVERSED, and the cause remanded with directions to DISMISS THE PETITION.