STATE EX REL. DANAHER, APPELLANT, *v.* RAY, REGISTER OF
LANDS, RESPONDENT.

(No. 3,310.)

(Submitted June 10, 1913. Decided June 26, 1913.)

[133 Pac. 961.]

*Mandamus—Writ Does not Lie, When.*

> 1. *Mandamus* does not lie when the writ will accomplish no beneficial
> result, as where an official act (the issuance of a certificate of sale
> of state land by the register of state lands) is sought to be compelled,
> which depends upon the approval or co-operation of a third person
> (the governor, as president of the board of land commissioners), not
> a party to the proceeding.

*Appeal from District Court, Lewis and Clark County; J.
Miller Smith, Judge.*

APPLICATION by the state on the relation of Mary M. Danaher
for writ of mandate to compel F. H. Ray, register of state lands,
to issue a certificate of sale of certain lands. From a judgment
in favor of defendant, relatrix appeals. Affirmed.

*Messrs. Wight & Pew,* for Appellant, submitted a brief; *Mr.
Chas. E. Pew* argued the cause orally.

*Messrs. Walsh, Nolan & Scallon,* and *Mr. John B. Clayberg,*
submitted a brief in behalf of Interveners-Respondents Edgerton
*et al.; Mr. Wm. Scallon* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Application to the district court of Lewis and Clark county
for *mandamus* to compel the defendant, as register of lands for
the state of Montana, to issue and deliver to the relatrix a
certificate of sale of certain lands described in the affidavit, the
same being a portion of the lands granted to the state by the
federal government in aid of the common schools, under the
Act approved February 22, 1889, commonly called the Enabling
Act. It appears from the affidavit that at a sale held by the

defendant on June 27, 1911, under authority conferred upon him by the statute (Sess. Laws 1909, Chap. 147, p. 289), and in conformity with the requirements thereof, the relatrix became the purchaser of the lands in question at the price of ten dollars per acre, paying to the defendant in cash fifteen per cent of the gross price. On July 11, 1911, the sale was approved by the board of land commissioners. The relatrix thereupon became entitled to receive a certificate of purchase. On August 18, 1911, she made demand for the certificate, but the defendant refused to issue it, basing his refusal upon the ground that the sale had been made through inadvertence and mistake, in that one John Edgerton and other persons had acquired a prior interest in the lands and that they were for this reason not subject to sale. After the defendant had filed his answer, Edgerton and his associates were permitted to intervene by answer and set up their alleged rights. Thereafter the controversy was submitted to the court upon an agreed statement of facts. The court held that the relatrix was not entitled to relief and rendered judgment accordingly. The relatrix has appealed.

The agreed statement sets forth in detail the facts upon which the parties base their respective claims. It appears therefrom that there was at the time the application was heard a contest pending before the state contest board, the issue being whether the relatrix has a prior right. Her counsel argue that having become the purchaser at a sale which was in all respects regular, she is entitled to a certificate without regard to any supposed rights Edgerton and his associates may have acquired in the lands prior to her purchase. In other words, upon the completion of the sale and receipt of payment, it is insisted, it became the ministerial duty of defendant to issue the certificate, leaving Edgerton and his associates to have determined, in an appropriate action, any rights which they may have. No appearance has been made in this court by the defendant. Counsel for the interveners argue that under the provisions of the statute supra, the authorities of the state, consisting of the board of land commissioners, the contest board and other state officers, are under the statute clothed with exclusive jurisdiction

to try all controversies involving disputed rights to land pur-
chased from the state, and that their proceedings are not, di-
rectly or indirectly, subject to control by the courts prior to
issuance of patent. Which of these contentions ought to be
sustained we shall not undertake to determine. Upon the facts
stated the action of the district court in denying the writ was
correct.

Section 1 of the Act constitutes the board of land commis-
sioners, consisting of the governor, superintendent of public in-
[1]    struction, secretary of state and attorney general, and vests
in it exclusive control and management of all lands belonging
to the state.  Section 2 designates the governor as president
of the board.  Section 19 creates a contest board.  The register
is made the chief officer of this board.  Section 43 provides:
"Whenever any purchaser of the state lands has paid fifteen per
cent of the purchase price of the land bought, and delivered to
the register of state lands the bond herein required to be given,
the register will make out a certificate of purchase and deliver
the same to the purchaser, which certificate shall contain a
description of the land purchased, the sum paid, the amount re-
maining due, the date at which each of the deferred payments
falls due, and the amount of each, and shall be signed by the
governor, as the president of the state board of land commis-
sioners, and by the register, and a record of the same shall be
kept in a suitable book."  It will be observed that while this
section enjoins upon the register the duty to issue the certificate,
it must be signed by the governor as president of the board of
land commissioners.  If it does not bear the signature of this
officer it is not complete, nor is it effective for any purpose.  In
effect, therefore, the duty enjoined by this section is made the
joint duty of the register and the governor as president of the
board of land commissioners.  Neither can act effectively with-
out the other.  Now, it does not appear from the statement of
facts or otherwise from the record, that the certificate has been
executed, ready for delivery by the register.  It is stipulated
merely that on August 18, 1911, the relatrix made written de-
mand upon the register for the issuance and delivery of the

certificate and that he then and there refused to issue and deliver it. It does not appear that any demand was ever made upon the governor. The issuance of the writ would therefore not have given the relatrix any effective relief, for though the register were compelled to perform the duty enjoined upon him so far as he might, the governor would be under no compulsion to act with him and would be free to refuse to add his signature. Thus the relatrix would have gained no substantial benefit.

The rule is well settled that when the writ will accomplish no beneficial result it will be denied. (*Gay* v. *Torrance*, 145 Cal. 144, 78 Pac. 540; *Boyne* v. *Ryan*, 100 Cal. 265, 34 Pac. 707; *Lamar* v. *Wilkins*, 28 Ark. 34; *State* v. *Towers*, 71 Conn. 657, 42 Atl. 1083; *State ex rel. Dixon* v. *Internal Imp. Fund*, 20 Fla. 402; *Stacy* v. *Hammond*, 96 Ga. 125, 23 S. E. 77; *People ex rel. Green* v. *Cook County*, 176 Ill. 576, 52 N. E. 334; *Brownsville Taxing Dist.* v. *Loague*, 129 U. S. 493, 32 L. Ed. 780, 9 Sup. Ct. Rep. 327; 26 Cyc. 167; Bailey on Habeas Corpus, 781.) The same rule applies where the official act to be performed depends upon the act, approval or co-operation of a third person not a party, even though it is clearly the duty of the defendant to act. (*State ex rel. Lacaze* v. *Cavanac*, 30 La. Ann. 237; High on Extraordinary Remedies, 3d ed., sec. 14.)

Nothing said herein is to be understood as a recognition of the right of third parties to intervene in this character of proceeding. The question whether this right is accorded under the statute on this subject will be determined when a case is presented requiring such determination.

The judgment is affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Sanner concur.

Rehearing denied September 15, 1913.