(Nos. 17737-17976.—Judgment and order affirmed.)

E. J. MACGREGOR *et al.* Appellants, *vs.* CORNELIUS R. MIL-
LER *et al.* Appellees.—THE PEOPLE *ex rel.* Diller S. My-
ers *et al.* Appellants, *vs.* CORNELIUS R. MILLER *et al.*
Appellees.

*Opinion filed December 23, 1926.*

1. MANDAMUS—*when mandamus will not lie.* Where the per-
formance of an official duty involves the exercise of judgment or
discretion the officer cannot ordinarily be controlled with respect
to the particular action he will take, and where the officer has ex-
ercised such discretionary power his action is not subject to review
or control by *mandamus,* and any reasonable doubt as to the ex-
istence of the discretionary power will be resolved in his favor.

2. SAME—*mandamus will not lie when action depends on ap-
proval of third party.* Mandamus will not lie when the official act
to be performed depends on the act, approval or co-operation of a
third person not a party to the suit.

3. CONSTITUTIONAL LAW—*one department of government can
not control action of another.* No one department of government
is subordinate to or may exercise any control over another or
exercise any power properly belonging to another except as is pro-
vided by the constitution, as the status of the three departments
is that of equality, each acting in its own sphere, independent of
each of the others.

4. HIGHWAYS—*mandamus will not lie to compel location or re-
location of State hard road—equity.* Inasmuch as all official action
of the officers of the Department of Public Works and Buildings
in carrying out the provisions of the State-wide Highway act is
subject to the approval of the Governor, and as such approval can
not be coerced by *mandamus, mandamus* will not lie to compel the
performance of any duties with reference to the location or re-
location of a State hard-surfaced road under the Bond Issue act
of 1917; but said department is not immune from legal restraint
in such case, as equity will always grant relief to a tax-payer by
injunction against illegal diversion of public funds or from any
other arbitrary action in violation of official duty.

5. SAME—*when original route of a hard road may be changed.*
The originally selected route of a hard road under the Bond Issue
act of 1917 may be changed by the Department of Public Works
and Buildings where it appears that the route as finally located is
the best route for the people of the State generally and will suffi-
ciently connect the intervening communities mentioned in the des-

ignation of the route, even though the department itself has once taken action in locating the road.

6. Same—*State highway department not required to use bridges in cities.* The provision of the State Bond Issue act of 1917 requiring "old bridges which form parts of the present roads" to be used in the State highway system "whenever such bridges are in proper condition," applies only to bridges in roads which are outside the limits of cities, villages or incorporated towns.

7. Same—*interest of State at large is primary consideration in locating State hard road.* The primary interest to be considered in the location of a hard-surfaced road which is a part of the State-wide system is that of the State at large and not of the particular locality in which the road is built, and the only right given by the Bond Issue act of 1917 to the people of a city or town designated on the route of a road under said act is the right of reasonable connection with other cities located upon the route.

8. Pleading—*the allegations of a bill are taken most strongly against pleader.* The allegations of a bill are to be considered most strongly against the pleader, and whenever two inconsistent or contradictory statements are contained in a bill that which is least favorable to the pleader will be adopted.

Appeals from the Circuit Court of Sangamon county; the Hon. E. S. Smith, Judge, presiding.

Gillespie & Gillespie, and George B. Gillespie, (Hugh J. Dobbs, of counsel,) for appellants.

Oscar E. Carlstrom, Attorney General, (B. L. Catron, of counsel,) for appellees.

Mr. Justice Heard delivered the opinion of the court:

Route No. 4 as the same is designated in the $60,000,000 Bond Issue act is as follows: "Beginning at the intersection of 48th and Ogden avenue in the town of Cicero, Cook county, and running in a general southwesterly direction to East St. Louis, affording Chicago, Cicero, Berwyn, Riverside, Lyons, Joliet, Dwight, Pontiac, Bloomington, Lincoln, Elkhart, Williamsville, Springfield, Carlinville, Edwardsville, Granite City, East St. Louis and the interven-

ing communities reasonable connections with each other."
Pontiac, the county seat of Livingston county, a city of
approximately 7000 inhabitants on this route, is situated
between Dwight and Bloomington and for many years
has been traversed by a much-traveled highway connecting
Bloomington and Dwight, which highway paralleled the
line of the Chicago and Alton railroad, which runs through
these cities. Upon this public highway, known as the old
Bloomington-Joliet State road, the Department of Public
Works and Buildings has constructed its system of durable,
hard-surfaced road, known as Route No. 4, from the north-
ward to a point one-fourth of a mile north of the city lim-
its of Pontiac, and it has also constructed Route No. 4
from the southward to a point near the southwesterly city
limits of Pontiac. This road diverged from the Blooming-
ton-Joliet State road at a point about one mile and one-
half southward from Pontiac, and, as located by the De-
partment of Public Works and Buildings, did not follow
the Bloomington-Joliet State road through the business part
of Pontiac but was to pass through about thirteen blocks
in the westerly part of the city and connect with the old
road north of the city near the point at which the road
from the north had been built. Five citizens and tax-payers
of Livingston county filed in the circuit court of Livingston
county a petition in the name of the People of the State
of Illinois on their relation, for a writ of *mandamus* against
Cornelius R. Miller, director of the Department of Public
Works and Buildings of the State of Illinois, and Frank T.
Sheets, superintendent of the division of highways of the
Department of Public Works and Buildings, to compel them
to locate and construct Route No. 4 with the least diver-
sion from the old route and the most practicable and con-
venient return thereto over certain specified streets and
bridges in the city of Pontiac which were a part of the old
highway through the city. Answers were filed by appellees,
the cause was heard by the court, and an order was entered

denying the prayer of the petition for writ of *mandamus* and dismissing the petition. An appeal was perfected from this order and judgment to the Appellate Court for the Third District, and the cause was by that court transferred to this court upon the ground that the State was interested in the result of the case, in that if the prayer for the writ be granted the expense of building the road which appellees would be ordered to build would have to be paid out of State funds.

Certain other residents and tax-payers of Pontiac presented a petition to the judge of the circuit court of Sangamon county for leave to file in that court a bill for an injunction to restrain the chief officers of the Department of Public Works and Buildings, the State Auditor of Public Accounts and the State Treasurer, from building, and paying money from the State treasury for the construction of, the hard-surfaced road on Route No. 4 through the west portion of the city of Pontiac, as was about to be done. After due notice to appellees a hearing was had upon the petition for leave to file the bill, and on consideration of the petition, and the bill attached thereto, the judge ordered that the petition be denied, refused to grant leave to the petitioners to file the bill and refused to grant the temporary restraining order prayed for in the bill. From this order an appeal was taken by the petitioners to this court, and upon motion the appeal has been consolidated with the appeal in the *mandamus* case.

The petition for *mandamus* contained many allegations which we have not set forth herein, as we have considered it only necessary to set forth enough to show the purpose of the petition and the scope of the relief sought. The only question necessary for us to consider in the *mandamus* case is whether or not *mandamus* is the proper remedy in the premises.

The duties involved in this case are duties resting on respondents by virtue of "An act in relation to the construc-

tion by the State of Illinois, of durable, hard-surfaced roads upon public highways of the State," etc. Section 1 of the act provides that a State-wide system of durable, hard-surfaced roads be constructed by the State of Illinois, as soon as practicable, upon the public highways of the State along the routes described therein, as near as may be. Section 2 provides that the construction of this system of roads, and all work incidental thereto, shall be under the general supervision and control of the Department of Public Works and Buildings, subject to the approval of the Governor of the State; also that the Department of Public Works and Buildings shall have power to make, and shall make, final decision affecting the work provided for in this section, and all rules and regulations it may deem necessary for the proper management and conduct of the work and for carrying out all of the provisions of the act in such manner as shall be to the best interest and advantage of the people of the State. Section 9 provides: "The general location of the routes upon and along which said proposed roads are to be constructed shall be substantially as described in this section, so as to connect, with each other, in substantially the manner hereinafter described in this section the different communities and the principal cities of the State; however, the said Department of Public Works and Buildings shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of this act." The act fixes the routes upon which the roads are to be constructed in a general way by naming the termini, which are in some cases hundreds of miles apart with no direct highway leading from one to the other, and in other cases several highways leading from one to the other, with many public highways intervening, and the power is delegated to the Department of Public Works and Buildings to determine, with the approval of the Governor, the exact highway between the termini upon which the road is to be

constructed. (*Mitchell* v. *Lowden,* 288 Ill. 327.) By the act in question such determinations are made final.

It is a well recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter, and where an officer, in the exercise of a discretionary power, has considered and determined what his course of action is to be he has exercised his discretion, and his action is not subject to review or control by *mandamus;* and so careful are the courts of encroaching in any manner upon the discretionary powers of public officials, that if any reasonable doubt exists as to the question of discretion or want of discretion they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer. (18 R. C. L. 124.)

In *Marbury* v. *Madison,* 1 Cranch, 137, it is said: "Still, to render the *mandamus* a proper remedy, the officer to whom it is to be directed must be one to whom, on legal principles, such writ may be directed, and the person applying for it must be without any other specific and legal remedy." In the same case it is also said: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined. Where the head of a department acts in a case in which executive discretion is to be exercised,—in which he is the mere organ of executive will,—it is again repeated that any application to a court to control in any respect his conduct would be rejected without hesitation. But where he is directed by law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden, as, for example, to record a commission or a pat-

ent for land which has received all the legal solemnities, or
to give a copy of such record, in such cases it is not per-
ceived on what ground the courts of the country are further
excused from the duty of giving judgment that right be
done to an injured individual, than if the same services were
to be performed by a person not the head of a department."

The duties of respondents in the premises are subject
to the approval of the Governor. The petition in the case
does not state whether or not such approval has been had.

*Mandamus* will not lie when the official act to be per-
formed depends on the act, approval or co-operation of a
third party not a party to the suit. (26 Cyc. 165; *State
v. North American Land and Timber Co.* 106 La. Ann. 621,
31 So. 172.) In *State v. Cavanac,* 30 La. Ann. 237, it is
said: "A *mandamus* will not issue to compel a public
official to perform a ministerial act when the evidence shows
that the performance of that duty is a physical impossibil-
ity, or that his ability to carry out the mandate of the court
depends upon the co-operative action of a third person who
is not before the court." In *Secretary of Interior v. Mc-
Garrahan,* 9 Wall. 298, it was held that where the law re-
quired the Secretary of the Interior to issue a patent upon
the applicant therefor complying with certain conditions,
*mandamus* would not lie to compel him to do his duty in
that respect, as the law required the patent to be signed by
the President and recorder. In *State v. Ray,* 47 Mont. 570,
133 Pac. 961, it is said: "The rule is well settled that when
the writ will accomplish no beneficial result it will be de-
nied. [Citing many authorities.] The same rule applies
where the official act to be performed depends upon the act,
approval or co-operation of a third person not a party, even
though it is clearly the duty of the defendant to act.—
*State v. Cavanac,* 30 La. Ann. 237; High on Extraordi-
nary Remedies, (3d ed.) par. 14." In *Turnbull v. Gid-
dings,* 95 Mich. 314, 54 N. W. 887, the Supreme Court of
Michigan upon this question says: "It must also clearly

appear that the person to whom it is directed has the absolute power to execute it, otherwise it will not be issued."

By article 3 of the Illinois constitution of 1870 the powers of the government of the State are divided into three distinct departments,—the legislative, executive and judicial,—and no person or collection of persons, being one of these departments, may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution. Neither of these three departments is subordinate to or may exercise any control over another except as is provided by the constitution. Their status is that of equality, each acting within its own sphere, independent of each of the others, so long as its action does not exceed the powers confided to it, unless particular exceptions are made to this general rule by the constitution itself. *People* v. *Bissell,* 19 Ill. 229; *Fergus* v. *Marks,* 321 id. 510.

In 1913 a statute of this State provided (Cahill's Stat. chap. 46, par. 82): "The Secretary of State, Auditor, Treasurer, and Attorney General, or any two of them in the presence of the Governor shall proceed within twenty days after the election, and sooner if all the returns are received, to canvass the votes given for  *  *  * representatives to Congress, judges of the Supreme Court, clerk of the Supreme Court, judges of the circuit court, senators, representatives to the General Assembly, members of the State Board of Equalization and trustees of the University of Illinois, respectively, and the persons having the highest number of votes for the respective offices, shall be declared duly elected;  *  *  * and to each person duly elected, the Governor shall give a certificate of election or commission, as the case may require, and shall cause proclamation to be made of the result of the canvass." An attempt was made to compel the Secretary of State, Auditor, Treasurer, Attorney General and Governor to correctly and properly canvass the abstract of votes as returned to them, to de-

clare the petitioner elected to the office of representative in the General Assembly, to cause proclamation of the result to be made and to issue a certificate of election to petitioner. The Supreme Court, after a lengthy resume of the authorities, held in *People* v. *Dunne,* 258 Ill. 441, that article 3 of the constitution, which divides the government of the State into three distinct departments, contemplates that neither department shall coerce the other, and hence the judicial department is without jurisdiction to award a writ of *mandamus* to compel the Governor to perform a duty, either ministerial or discretionary, imposed upon him by his office, and said: "It necessarily follows from uniform decisions of this court that we have no jurisdiction to award writs against the chief executive of the State commanding him to issue certificates of election to the relators. Whether the other executive officers who were made defendants could be coerced by the writ to do the things asked for, according to the view of this court as to the proper manner of canvassing returns, need not be considered, since the writs would be ineffective unless the Governor were included and required to make proclamations and issue the certificates."

Inasmuch as all official action of respondents in carrying out the provisions of the State-wide Highway act (Cahill's Stat. chap. 121, par. 183 *et seq.*) is subject to the approval of the Governor, and as such approval cannot be coerced by *mandamus,* we are of the opinion that *mandamus* will not lie against respondents to compel the performance of any duties so far as the same are imposed upon them by the act in question with reference to the location or re-location of roads, and the court properly dismissed appellants' petition for *mandamus.* We must not, however, be understood as holding that the Department of Public Works and Buildings is supreme and that it can locate and build the hard-surfaced roads provided for in the $60,000,000 Bond Issue act wherever it pleases, without regard to law and without any restraint from the courts.

While the court cannot control the Department of Public Works and Buildings by *mandamus* in the performance of its duties in the matter of locating and building roads under the $60,000,000 Bond Issue act, the department is not immune from legal restraint in the premises, as equity will always grant relief to a tax-payer by injunction against any illegal diversion of the public funds (*Peabody* v. *Forest Preserve District,* 320 Ill. 454,) or from any other arbitrary action in violation of official duty. It therefore becomes necessary for us to consider the question whether or not the court erred in refusing to allow the filing of the bill for an injunction.

The bill, after alleging the status of appellants, the size and location of Pontiac, the existence of the Bloomington-Joliet State road, approximately paralleling the steam railroad operated by the Chicago and Alton Railroad Company, its use as a chief and main traveled highway for horse-drawn and motor vehicles between the cities of Bloomington, Pontiac, Dwight, Joliet and cities northward for more than fifty years, alleged that upon this highway the State of Illinois had constructed its system of durable, hard-surfaced road known as Route No. 4, from Chicago, and, extending said highway, had followed this old road from Joliet southward to a point one-fourth of a mile north of the city limits of the city of Pontiac; that the Department of Public Works and Buildings had also constructed a durable, hard-surfaced road (a part of Route No. 4) in Livingston county, extending to a point some few hundred yards south of the Reynolds street road, near the city limits of Pontiac on the south; that the old State road ran from a point one mile and one-half south of the city of Pontiac into and through the city, entering the city at its intersection with Lincoln street and extending northeast to Reynolds street across the Vermilion river (which extends east and west through the city) over a bridge located on Vermilion street or another bridge on Mills street, and,

after passing through the central business section, extended northward through the city; that the old traveled highway from the south crossed the Chicago and Alton railroad approximately one and one-half miles south of the city, but that the Department of Public Works and Buildings, in the construction of Route No. 4, extended the same, by diversion from the old route, northward to the point where the construction ceased, on the west side of the railroad, which was about 200 yards south of the Reynolds street road,—an extension of Reynolds street in the city of Pontiac; that the point at which construction was stopped is about 75 yards west and on the opposite side of the Chicago and Alton railroad from the old route; that the practical method of extension, with least diversion from the old route and most practicable and convenient return thereto, would be to extend the road northward on the west side of the Chicago and Alton railroad to the Reynolds street road, thence across the railroad to Vermilion street or Mills street, thence northward over either the Vermilion street bridge or the Mills street bridge, thence east to Main street, thence through the principal business portion of the city northward across the tracks of the Chicago and Alton railroad to connect with the hard road on Route No. 4 which had been built from the northward; that the bridges on Vermilion and Main streets had been used for many years by the traveling public as a part of the old State road; that it was the duty of the Department of Public Works and Buildings in building Route No. 4 to utilize these bridges; that instead of connecting Pontiac with the cities and villages to the north and south thereof and making connection with the streets of Pontiac, which would direct the traveling public over the bridges of the Vermilion river which are in existence, the Department of Public Works and Buildings arbitrarily, and without any good and sufficient reason therefor, had caused to be surveyed a route through the outskirts of the city for a part of Route No. 4 different

from the old highway; that as proposed to be built the road would extend north from the Reynolds street road approximately parallel with the Chicago and Alton railroad through an open field to the Vermilion river, thence north through an open field to Madison street, thence north to a platted but unimproved section of the city to Illinois street, thence north a distance of approximately three-fourths of a mile across the Illinois Central railroad, thence in a north-easterly direction to connect with the existing pavement on Route No. 4; that the proposed route follows a line on the west side of the city of Pontiac for a portion of the distance where there is now no highway; that the change of route will involve great expenditures for the right of way and construction of a bridge across the Vermilion river, which increased cost and expense will in the aggregate exceed the sum of $250,000; that the director of the Department of Public Works and Buildings in locating, laying out and constructing Route No. 4 in fact connected the hard-surfaced road from Bloomington to Pontiac with the hard-surfaced pavement in the streets of the city of Pontiac, and also connected the hard-surfaced road of Route No. 4 extending southward from Dwight to Pontiac with the hard-surfaced pavement in the streets of Pontiac, and so routed the travel through Pontiac on Route No. 4 that it would be on and pass over the hard-surfaced paved streets from the south limits to the north limits of Pontiac; that on March 1, 1920, by a certain written certificate of location Frank K. Bennett, as director of the Department of Public Works and Buildings, S. E. Bradt, as superintendent of highways, and Clifford Older, as chief engineer of the department, located Route No. 4; that this certificate of location exhausted the power of the department to locate the hard-road route through the city of Pontiac; that a change of route would cause a loss of business opportunities to those having business property located on the old road. The bill alleged that unless restrained by injunction

appellees would build the road on the new location and cause the cost of the same to be paid out of the State treasury, and prayed for an injunction restraining them from so doing.

It is contended by appellants that Route No. 4 having been located by the Department of Public Works and Buildings on March 1, 1920, such location became permanent and that the power and authority of the Department of Public Works and Buildings were thereby exhausted with relation thereto. This contention is not tenable for three reasons: First, the purported location of March 1, 1920, which is set out *in hæc verba* in the bill, does not purport to definitely and permanently locate any portion of Route No. 4 here in controversy; second, the $60,000,000 Bond Issue act did not give any authority to the Department of Public Works and Buildings to locate and build any portion of the State-wide hard-surfaced road system within the city of Pontiac; and third, the Department of Public Works and Buildings has power and jurisdiction, under the statute, to make reasonable alterations in the location of hard roads. The originally selected route of a hard road under the Bond Issue act of 1917 may be changed where it appears that the route as finally located is the best route for the people of the State generally and will sufficiently connect the intervening communities mentioned in the designation of the route. *Stratton* v. *Henkel Construction Co.* 320 Ill. 526.

Section 7 of the $60,000,000 Bond Issue act, among other things, provides: "The old bridges which form parts of the present roads shall, whenever such bridges are in proper condition, be used in said proposed system." It is contended by appellants that by reason of this statute it is made the duty of the Department of Public Works and Buildings to utilize the bridges on Mills and Vermilion streets, or one of them, in the construction of the hard-surfaced road to connect the two parts of Route No. 4 heretofore built. This contention cannot be maintained.

While it is alleged in the bill that the bridges at Vermilion and Mills streets "are in proper condition within the meaning of the statute," this allegation is a mere conclusion of the pleader, and no facts are stated as to when the bridges were built, the kind of material of which the roadways of the bridges are constructed, or any other sufficiently detailed statement of facts from which the court can see that the bridges are in proper condition to be used in the proposed system. Even if it were to be conceded that the allegations with reference to the condition of the bridges were sufficient in the bill, it could scarcely be contended that by reason of the fact that a bridge existed over a stream within a city the Department of Public Works and Buildings would be compelled to so locate a road which it was about to construct under the $60,000,000 Bond Issue act that it would cross such bridge, although to do so would necessitate the crossing of two or more railroad tracks at grade and the location of the road so as to cross such bridge be otherwise contrary to the best interests of the traveling public. That the language used in section 7 was not intended by the legislature to have any application to the bridges mentioned in the bill is evident from the fact that no part of the system which was authorized by the act to be built could under the terms of that act be built within the city of Pontiac. The word "road" is now commonly used as denoting a public way in the country rather than the street of a town or city, and the most natural construction of the portion of the statute in question would be to confine it to bridges in roads where such roads are outside of the limits of cities, villages or incorporated towns. (Elliott on Roads and Streets,— 2d ed.—sec. 7; *Mushbaugh* v. *Village of East Peoria,* 260 Ill. 27; *Village of Glencoe* v. *Hurford,* 317 id. 203.) By the Bond Issue act approved June 11, 1925, in force July 1, 1925, the Department of Public Works and Buildings was authorized and directed to construct and maintain durable, hard-surfaced roads within the corporate limits of cities,

villages and towns upon the routes designated as 1 to 46, inclusive, in all cases where the streets or other thoroughfares from the corporate limits where the route enters the municipality are not paved, so as to make a continuous hard-surfaced road through the municipality, and provided that the streets or other thoroughfares upon which durable, hard-surfaced roads were to be constructed should be such as in the discretion of the department afforded the safest, most direct route and the one best adapted to the needs of persons making use of the route.

It is contended by appellants that the roads authorized to be built under the act of 1925 should be considered for all purposes parts of the through routes, and that the hard roads constructed between cities described in the act of 1917 should connect by the most direct route with the pavements of the cities so as to form a continuous traveled route over the pavements of cities from the points of entrance and departure, and that such route through a city can be constructed by the Department of Public Works and Buildings only if there is no continuous pavement from the points at which the route enters and departs from the city, so that travelers upon the route may pass through the city on a continuous hard-surfaced pavement, and that therefore the Department of Public Works and Buildings has no authority in law to construct the road upon the route upon which it proposes to construct it. While in one portion of the bill it is alleged that in constructing Route No. 4 the Department of Public Works and Buildings connected the hard-surfaced road constructed from Bloomington to Pontiac with the hard-surfaced pavements of the streets of the city of Pontiac, and also connected the hard-surfaced road of Route No. 4 extending south from Dwight to Pontiac with the hard-surfaced pavements of the streets of Pontiac, it is evident from the allegation of facts contained in the bill that this conclusion of the pleader is untrue, as the bill shows that the hard-surfaced road constructed on Route

No. 4 does not reach to the limits of the city either on the north or on the south. The allegations in a bill are always to be considered most strongly against the pleader, and wherever two inconsistent or contradictory statements are contained in a bill, that which is least favorable to the pleader will be adopted by the court. While the bill speaks of hard-surfaced streets in Pontiac, there is no description of the materials with which such streets are surfaced nor of their kind and character, although in one place in the bill they are alleged to have been used for over fifty years. There is no allegation in the bill that there is any cement paving whatever in the city of Pontiac so as to make a continuous hard-surfaced road through the city. There are no allegations in the bill which show that the route contended for by appellants is a safer or more direct route, or one better adapted to the needs of persons making use of the route, than the one proposed by appellees. While some argument to that effect is advanced by appellants, the facts as to the location of the two routes specified in the bill show that the route proposed by appellees is much safer than the old route, for the reason that it avoids two grade crossings over the tracks of the Chicago and Alton railroad. It is undeniable that grade crossings of railroads with hard roads are hazardous and where practicable should be avoided, (*People* v. *Department of Public Works and Buildings*, 320 Ill. 117,) and it is a matter of common knowledge that in all modern, scientific road and railroad building grade crossings are being avoided as far as possible. While there is some argument that the route contended for by appellants would make a more direct connection than the one located by appellees, the two routes are set forth in detail in the bill, and the petition for leave to file the bill was heard on August 5, 1926, by the judge of the circuit court of Sangamon county, who on June 9, 1926, had fully heard and considered all the evidence in the *mandamus* case and so was familiar with the streets and localities

designated in the bill and knew that the route proposed by appellees was not only a safer route but a shorter and more direct route than the one contended for by appellants.

While the present location of this route may be a disappointment to some of those located upon the old road, yet this route is a part of a State-wide system, and the primary interest to be considered is that of the State at large and not of the particular locality in which the road is built. The only right given by the act specifically to the people of Pontiac is the right of reasonable connection with the other cities located upon the route. This is given to the people of Pontiac by the proposed location. Persons living east of the Chicago and Alton railroad, to reach the hard road either north or south of Pontiac by the old road, of necessity had to cross the railroad tracks of that railroad once. By the proposed route, to go in either direction they only have to cross the tracks once. Residents of Pontiac residing west of the Chicago and Alton railroad tracks passing over the route contended for by appellants, to reach the hard road of Route No. 4 either north or south, of necessity would have to cross the tracks twice while by use of the route as located by appellees they will not have to cross those tracks at all.

It is contended by appellants that to build the road as proposed by appellees would cause a great waste of public money, and that therefore they should have been allowed to file their bill. There is no allegation in the bill whatever as to the approximate cost of the construction of a continuous cement hard-surfaced road through Pontiac over the route contended for by appellants. While there is an allegation in the bill that the change of route will involve great expenditures for right of way and the construction of a bridge over the Vermilion river, which increased cost and expenses will in the aggregate exceed the sum of $250,000, there is no allegation as to how much more, if anything, it will cost to build the road over the route pro-

posed by appellees than it will to build it over the route contended for by appellants. The distance of the new route being less than that of the old, it is evident that the cost of laying the cement slab will be less on the new route than on the old. By the terms of the act it is left to the discretion of the department to select the safest, most direct route and the one best adapted to the persons making use of the route, and even if the bill, without going into detail, had alleged that the route proposed by the department would cost $250,000 more than the old route, this court could not say, as a matter of law, that the expenditure by the department of that amount of money for the purpose of eliminating two railroad grade crossings and the inconvenient right-angle turns in the business part of the city of Pontiac would be an abuse of the discretion lodged in the department by the legislature. When the allegations of the bill are all considered together we are of the opinion that when the change in the location is considered in connection with the reason for it and the apparent greater safety to traffic, the change in location cannot be said to be unauthorized or arbitrary but is such as is within the power and authority of the Department of Public Works and Buildings to make.

The bill sought to be filed in this case did not state such facts as called for the intervention of a court of chancery, and therefore the judge of the circuit court of Sangamon county did not err in refusing to allow the same to be filed.

The judgment of the circuit court in the *mandamus* case is affirmed and the order of the judge of the circuit court of Sangamon county refusing to allow the bill for an injunction to be filed is also affirmed.

*Judgment and order affirmed.*