THE PEOPLE ex rel. R. H. Mann et al. Appellees, vs. THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS et al. Appellants.

Opinion filed February 18, 1926.

1. MANDAMUS—petitioner must show a clear right to the writ. The writ of mandamus will not issue unless the petitioner shows a clear and legal right to the writ and that it is the duty of the party against whom the writ is sought to do the act which the petitioner seeks to have performed.

2. HIGHWAYS—State department may make minor changes in location of hard road. By the act of 1917 authorizing the State to build durable, hard-surfaced roads the legislature conferred on the Department of Public Works and Buildings power to make minor changes in the location of a road described in the act, and to secure, by purchase or condemnation, rights of way therefor.

3. SAME—what change in location of hard road is authorized. The Department of Public Works and Buildings is authorized to change the location of a hard road from the center of a city with which it is connected under the act of 1917 to the outlying portions of the city, where the change eliminates a railroad crossing and affords greater safety to traffic, although traffic from one section of the city must cross the railroad to reach the hard road.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, and W. E. TRAUTMANN, of counsel,) for appellants.

EPLER C. MILLS, and LAWRENCE E. STONE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an action in mandamus by the People, on the relation of five individual residents of the city of Virginia, Cass county, against the Department of Public Works and Buildings, the director of said department and the superintendent of State highways, to compel the location and

construction of a hard-surfaced road through the ·city of Virginia along and upon the highway known as Springfield-Beardstown road. The road is provided for by the act of 1917 known as the $60,000,000 Bond Issue act. A hearing was had in the circuit court, and at its conclusion a judgment was entered awarding the writ. From that judgment the defendants have prosecuted this appeal.

Route No. 3 is described in the act as beginning in a public highway at Morrison and running along such highway in a southerly direction to Chester, affording connections with each other of a large number of towns mentioned, including Beardstown, Virginia and Ashland. After the act became effective and some preliminary investigations had been made by the Department of Public Works and Buildings a tentative location of the highway was made between Beardstown, Virginia and Ashland along the Springfield-Beardstown public highway, but that location was not intended to be final. The hard-surfaced road has been completed from Beardstown to Shiloh Church, approximately three miles west of Virginia, and on the east side of the city from Ashland to a point where the Baltimore and Ohio railroad crosses the Springfield-Beardstown highway, about one mile east of the eastern limits of the city of Virginia. The Springfield-Beardstown highway runs parallel to and on the north side of the Baltimore and Ohio railroad from Beardstown to a point a little more than a mile west of Virginia, where it crosses the railroad and angles southeasterly through the city of Virginia and again crosses the Baltimore and Ohio railroad about a mile east of the city. Appellants determined that it would be an increased hazard to traffic to cross the Baltimore and Ohio railroad at grade twice, and that the building of subways or overhead crossings was impracticable on account of conditions of the surface and the great expense involved. They therefore determined to locate Route No. 3 on the north side of and parallel with the Baltimore and Ohio railroad from Shiloh

Church on the west through the city of Virginia to where the Springfield-Beardstown highway crosses the Baltimore and Ohio railroad east of the city and thereby avoid grade crossings over that road. The new route selected passes through the city about four blocks north of the Springfield-Beardstown highway and is 1100 feet north of the public square of the city. Appellees claim the new location was unauthorized by the statute and was an arbitrary departure from its requirements by appellants.

The old highway passes along a street through the city of Virginia near its center. The new route passes for approximately a mile from east to west through the city about one-fourth of a mile south of the north limits and three-fourths of a mile north of the south limits. Twelve hundred feet of the new route is along a paved street, but north of the new route the territory is not platted into lots and blocks and is vacant property or sparsely built up. The proposed new location complies with the requirements of the statute in affording reasonable connections of the city of Virginia with the towns named in the act east and west of it. Traffic originating in the city south of the new route would be required to pass four blocks north to reach the hard road before proceeding east or west.

Section 1 of the act of 1917 provided a system of durable hard-surfaced roads to be constructed by the State upon public highways of the State along the routes therein described, "as near as may be," and that the State issue and sell bonds to provide funds therefor. Section 2 gives the Department of Public Works and Buildings power to make all final decisions affecting the work and all rules and regulations deemed necessary for the proper management and conduct of said work and for the carrying out of the provisions of the act for the best interest and advantage of the people of the State. Section 9 provides that the general location of the routes of the proposed roads shall be constructed "substantially as described in this section," so as

to connect with each other the different communities and the principal cities of the State, and the department is given power "to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of this act." Section 11 provides that whenever the making of any part of the improvement or the locating of a route, or any part thereof, requires that private property be taken or damaged, the department shall have the right to purchase or condemn property under the Eminent Domain act.

The law is well settled that the writ of *mandamus* will not issue unless the petitioner shows a clear and legal right to it, and that it is the duty of the party against whom the writ is sought, to do the act which the petitioner seeks to have performed. (*People* v. *Blair,* 292 Ill. 139.) Waiving all questions as to necessary parties defendant and the power of the court to award the writ of *mandamus* in such cases, the question presented for our decision is whether the locating of the route by appellants through the city of Virginia was the exercise of an unauthorized and arbitrary power. In *Mitchell* v. *Lowden,* 288 Ill. 327, the court said the act conferred upon the Department of Public Works and Buildings power to make final decisions affecting the work provided for, and the management and conduct of the work for carrying out the provisions of the act for the best interest and advantage of the people of the State; that the general location of the routes upon and along said proposed highways should be substantially as described in the act, but that power was conferred to make minor changes necessary to carry out the provisions of the act. The court said: "The selection of the public highways to be affected is not left to the arbitrary discretion of the department, as the appellant's bill avers. It is true, as the bill alleges, that the act fixes the routes upon which the roads are to be constructed, in a general way, by naming the termini, which are in some cases hundreds of

miles apart, with no direct public highway leading from one to the other and with many public highways intervening, and the power is delegated to the Department of Public Works and Buildings to determine the exact public highways between the termini upon which the roads shall be constructed. The determination is not, however, left to an arbitrary discretion. While the termini are the only points fixed by the statute, the roads are to be constructed between the termini substantially upon the routes described, so as to connect with each other the different communities and principal cities of the State, and so as to afford the different places named and the intervening communities reasonable connection with the termini and with each other."

The fact that the act expressly authorizes the commission to make minor changes in the location and to secure by purchase or condemnation rights of way for such changes, plainly shows the department was not intended to be restricted to the exact location of the existing highways in building a hard-surfaced road. Many of the highways of the State existing at the time of the passage of the act had been opened for travel for many years. It is said the Springfield-Beardstown road has been traveled more than fifty years. At the time many of the highways were opened up it is well known no great pains or care was taken in selecting the location, and when the legislature authorized the State to build durable hard-surfaced roads it clearly intended that where any reason existed for making minor changes in the location the power to make them was conferred on the department. The question then is whether the proposed change in the route is, in view of all the evidence and circumstances, unauthorized and arbitrary.

So far as the expense of making the change is concerned the evidence is conflicting, but we are convinced that the difference in expense between the two routes through the city of Virginia is not very material. If the crossings of the Baltimore and Ohio railroad and the State hard road

east and west of the city of Virginia are to be subways or overhead crossings, the expense in following the old route would be much greater. It is undeniable that grade crossings of railroads with hard roads are hazardous and where practicable should be avoided. This is recognized by appellees, whose plan for building the hard road proposes a crossing by subway under the Baltimore and Ohio railroad between the western limits of the city and Shiloh Church. The evidence shows the crossing of the Springfield-Beardstown highway over the Baltimore and Ohio railroad east of Virginia is at an acute angle; that it is a dangerous crossing, and accidents have occurred to people passing over the railroad on the highway. The new route does not cross the Baltimore and Ohio railroad but parallels it from Shiloh Church through the city of Virginia, connecting with the Springfield-Beardstown highway about a mile east of the city, where the railroad angles further south and west, thus obviating any crossings there with the railroad.

Appellees contend that the fact that the new route passes through the city four blocks north of the old road is a serious detriment and inconvenience to the citizens and property owners south of the proposed route, but we do not see how it can be materially more injurious in that respect than was the location of the railroad, many years ago, through the same part of the city and parallel with the new route. It is true, traffic originating south of the railroad would be required to cross the track to get to the hard road, but the crossing would be at or near the station, where trains pass at a slow speed. Both the old road and the new location cross the Chicago, Peoria and St. Louis railroad, which runs north and south at the crossing places, but the new route also crosses that road at or near the station, where the speed of trains is not dangerous. There are some two or three side-tracks of the Chicago, Peoria and St. Louis railroad crossed by the new route, but the evidence shows they are very seldom used.

We are of opinion that when the slight change in the location is considered in conection with the reasons for it, and the apparent greater safety to traffic, the change in location cannot be said to be unauthorized or arbitrary but is within the power and authority of the Department of Public Works and Buildings to make it. We deem it unnecessary to go into greater detail in stating the reasons for our conclusions, as that would necessarily tend to elaborate more particularly the reasons why the new route is the safer one for the bulk of traffic passing through the city of Virginia or originating therein.

The judgment of the circuit court is reversed.

*Judgment reversed.*