(No. 18477.—Reversed and remanded.)
HARRY W. WATTS, Appellant, *vs.* THE DEPARTMENT OF
PUBLIC WORKS AND BUILDINGS *et al.* Appellees.

*Opinion filed February 24, 1928.*

1. WORDS AND PHRASES—*general meaning of the word "community."* The word "community" is to be interpreted according to the subject matter concerning which the term is used, but in a general way it refers rather to people who reside in a given locality or neighborhood than to any geographical description of the territory in which they live.

2. HIGHWAYS—*meaning of term "intervening community," in Bond Issue acts.* The term "intervening community," as used in the Bond Issue acts providing for a State-wide system of hard roads, means persons living more or less in proximity, who for the purpose of travel between the principal cities mentioned on the routes defined would naturally select, approximately, the same route or general direction of travel.

3. SAME—*hard roads under Bond Issue act of 1917 must be laid out substantially as described in the act.* While by section 9 of the Bond Issue act of 1917 the Department of Public Works and Buildings has the right to make minor changes by re-location, if necessary, of the hard roads described in the act, the roads are to be constructed between the termini substantially upon the routes described, so as to afford the various other named cities, and the communities intervening, reasonable connection with the termini and with each other; and the department does not have unlimited discretion in the location of routes.

4. SAME—*when State department is authorized to select one of two proposed routes for hard road.* Where two highways are considered by the Department of Public Works and Buildings in laying out a hard road, each of which routes comes within the purpose of the Bond Issue act to give a direct and practical connection between the cities named and affords to the intervening communities reasonable connection with each other and with such principal cities, the department is authorized to select either, as may appear for the best interest of the State.

5. SAME—*interest of State at large controls selection of route for hard road.* The primary interest to be considered in the construction of the State-wide system of hard roads under the Bond Issue acts is that of the State at large and not of the particular locality in which the road is built, and neither the Department of Public Works and Buildings, nor any officer connected therewith,

has a right to consider local interests in conflict with the interests of the State at large as designated by the law.

6. SAME—*act of 1927 to validate location of Route 23 is invalid.* The act of June 16, 1927, to validate the location of Route 23 under the Bond Issue act as proposed by the Department of Public Works and Buildings is invalid, as it violates section 22 of article 4 of the constitution, prohibiting the passing of local or special laws for "laying out, opening, altering and working roads or highways."

APPEAL from the Circuit Court of LaSalle county; the Hon. JOE A. DAVIS, Judge, presiding.

WOODWARD, HIBBS & POOL, for appellant.

OSCAR E. CARLSTROM, Attorney General, and S. S. DU-HAMEL, (LEE O'NEIL BROWNE, and A. J. O'CONOR, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed a bill in the circuit court of LaSalle county against the Department of Public Works and Buildings and certain officers thereof, the State Auditor, the State Treasurer and the Harrison Engineering and Construction Corporation, seeking an injunction to restrain the Department of Public Works and Buildings from laying out, locating and improving a part of the State-wide system of highways known in this record as Line A of Route 23 of such system. The ground upon which the bill is based is, that to construct Line A would be a departure from the route for which the bonds were voted and the Department of Public Works and Buildings has no jurisdiction to make such change. The cause was heard on bill, supplemental bill and answers, and evidence taken in open court. The chancellor dismissed the bill for want of equity, and the cause comes here for review.

Appellant filed the bill as a tax-payer of LaSalle county, stating therein that the bill was filed on his own behalf and on behalf of other tax-payers of the State. It set out that

under the Bond Issue acts known as the Sixty and the One Hundred Million Dollar Road Bond Issue acts Route 23 is described as follows: "Beginning in a public highway at the Wisconsin State line, north of Harvard and running along such highway in a general southerly and southwesterly direction to Streator, affording Harvard, Marengo, Sycamore, DeKalb, Ottawa, Streator and the intervening communities reasonable connections with each other." It is averred that Route 23 has been completed from the Wisconsin State line to the southern boundary of DeKalb county, which is also the north boundary of LaSalle county, and that it has also been completed from Streator to the court house in Ottawa, in LaSalle county. The dispute arises over the location of the road between Ottawa and the north boundary of the county. The bill avers that the Department of Public Works and Buildings has surveyed and laid out two lines for Route 23 from the court house at Ottawa to the northern boundary of the county. One, known in this case as Line A, or the Terra Cotta road, extends from the court house in Ottawa north on LaSalle street ten blocks to Norris street, thence west on Route 7 to the northwestern limits of the city of Ottawa, a distance of approximately 1.38 miles. Route 7 is already paved. From this point on Route 7 the line proceeds north and northwesterly to a junction with Route 18 at a point on the southeasterly side of the right of way of the Chicago, Burlington and Quincy Railway Company approximately one mile east of the city of Earlville. The complete distance covered by Line A is approximately 17.196 miles. The bill avers that it is the plan of the department to follow Route 18 as the same has been laid out by the department along the southeasterly side of said railway right of way to the village of Leland, at which point Route 23 proceeds north and east to the southern boundary line of DeKalb county. The bill also avers that the other line surveyed and laid out is known as Line B, or Plank road, or Ruger road. This line extends north

from the court house in Ottawa on LaSalle street ten blocks to Norris street, thence east one block to Columbus street, thence north to the northerly limits of the city of Ottawa, thence north, with a jog of one mile east, to the junction of Route 18 as now laid out by the department, at a point one mile west of the western limits of the village of Leland, a distance of 18.357 miles. Between the village of Leland and the north boundary of LaSalle county the two lines are the same. There is no evidence of advantage in topography in either route. In order that there be an understanding of the location of Route 23 and Lines A and B it is necessary to insert a plat of the northern portion of LaSalle county:

Route 23 enters LaSalle county from DeKalb at a point two miles east and a mile north of the east boundary of the village of Leland. Lines A and B are indicated on the accompanying plat by broken lines and marked "Line A" and "Line B."

The bill avers that the Department of Public Works and Buildings advertised for the construction of a paved roadway over both Line A and Line B, each bidder being required to submit a proposal upon both lines. The contractors bidding were notified that the contract would be let for Line A unless it was determined in a legal proceeding that the improvement on Line A was unauthorized, in which case the road should be constructed on Line B. The bill also avers that appellee the Harrison Engineering and Construction Corporation was the lowest bidder, its bid for Line A being $371,531.52 and for Line B being $380,996.09, and that the contract was accordingly awarded to it for the construction of the road on Line A.

It is alleged in the bill that the Department of Public Works and Buildings is without warrant or authority of law to survey, lay out and locate Route 23 between the court house in Ottawa and the village of Leland along Line A or to advertise for bids or let a contract for construction of a road upon Line A; that Line A does not traverse any intervening community between the city of DeKalb and the city of Ottawa but lies west of any intervening community between such cities. The bill avers that a straight line from DeKalb to Ottawa would pass east of Leland one mile or more; that the road of public travel between DeKalb and Ottawa now is, and for more than fifty years has been, substantially along a straight line; that the hard road as constructed from DeKalb to the south boundary of DeKalb county extends in substantially a straight line. It is alleged that Line A traverses a sparsely settled territory of entirely rural population; that the connection afforded by it by way

of Earlville does not pass through any community lying between DeKalb and Ottawa, but is situated approximately 1½ miles south and 5½ miles west of Leland and is 16 miles north and three miles west of the court house in Ottawa; that in traveling from DeKalb to Ottawa or from Leland to Ottawa over Line A it would be necessary to travel in a southwesterly direction from the village of Leland to a point approximately one mile east of Earlville, and thence south, southeasterly and east to the city of Ottawa; that such a route is neither practicable nor economical and does not afford the residents and citizens constituting the communities of Leland and those north thereof to the Wisconsin State line reasonable connection with Ottawa or Streator, or the residents and citizens of the two last named cities with points north to the Wisconsin State line, but that the traveling public will be required, in the use of Line A, to travel approximately four miles further by this route than by traveling over Line B, and that such additional mileage will entail great added expense and inconvenience to the traveling public. It is also averred that the Bond Issue acts require that Route 23 be over, along and upon an established highway usually, customarily and ordinarily traveled between its northern and southern termini, and that to locate the road over any other than such established highway is a wholly different route from that described in the Bond Issue acts and is illegal, unwarranted and unauthorized, and the Department of Public Works and Buildings is without power, jurisdiction or authority to so deviate from a highway established and used at the time of the adoption of the road acts except in minor particulars expressly permitted in the acts; that Line B between Ottawa and Leland is one of the public highways described in the Bond Issue acts, and constitutes the leading, practicable, straightest, shortest and most direct route between Ottawa and the intervening communities between Ottawa and Leland, and the most di-

rect, convenient and practical communication with points north of LaSalle county to the Wisconsin State line. It is then averred, and not denied, that Leland is an unincorporated village with a population of approximately 500, situated about 2½ miles west of Route 23 leading south from DeKalb to the LaSalle county line; that there is an incorporated community known as Baker located on the east side of the Plank road, or Line B; that an unincorporated community known as Harding is approximately 1½ miles west of the Plank road; that Serena is an unincorporated community located about four miles east of the Plank road, with a good gravel road connecting it therewith; that Wedron, also an unincorporated community, is situated about three miles east of said road; that Dayton, also an unincorporated community, is situated about 2½ miles east of the Plank road; that the citizens of these various communities travel to and from the county seat and part of them meet socially and transact business in the village of Leland; that at no time do the citizens of any of these communities ever use the Terra Cotta road, or Line A, for travel or communication to and from Ottawa or Leland, but that said road does not give to these named communities, or any of them, reasonable connection with the city of Ottawa, and does not afford DeKalb and other communities north of LaSalle county reasonable connection with Ottawa and Streator.

The answer of the Department of Public Works and Buildings and officers thereof avers that the total cost of constructing the improvement over Line A would be $480,764.52 and over Line B $496,124.09; that the territory adjacent to Line A is farm land and fertile, and that that line would accommodate a large number of grain growers in the delivery of grain; that Line A is nearer the center of LaSalle county; that Earlville is an incorporated city with a population of 1012; that Mendota is an incorporated city with a population of 3934, eleven miles west of Line A; that Meriden is seven miles west of Line A, with a popula-

328—38

tion of 100; that Earlville, Mendota and Meriden are intervening communities between Ottawa and DeKalb, and each is entitled to and would have reasonable connections with Ottawa and points south, and would be compelled to travel approximately five miles further to Ottawa by going over Line B; that the unincorporated communities of Prairie Center and Waltham are three miles and seven miles, respectively, west of Line A and are intervening communities between Ottawa and DeKalb; that there are more cross roads intersecting Line A than Line B; that Line A has no gravel improvements, while more or less of Line B has been graveled; that Line A is of local convenience to more people, and that it is for the best interest of the people of the State that the road be constructed on Line A. Other defendants filed an answer denying that the complainant was entitled to the relief prayed.

It appears that during the pendency of the bill the General Assembly passed an act the purpose of which was to legalize and validate the act of the department in locating the road over Line A. Thereafter a supplemental bill was filed averring the passage of the act referred to, and alleging that it was unconstitutional and void and in violation of section 22 of article 4, prohibiting the General Assembly from passing local or special laws for "laying out, opening, altering and working roads or highways;" that the act was also void because in violation of that part of section 13 of article 4 which provides that "no law shall be revived or amended by reference to its title only, but the law revived or the section amended, shall be inserted at length in the new act," and that it is also in violation of sections 18 and 19 of article 4 of the constitution in that it was an attempt to amend the Bond Issue acts without a vote of the people. The court held the act of the legislature validating the act of the department in locating the route over Line A to be unconstitutional. On a hearing of evidence a decree was entered dismissing the bill for want of equity.

The physical facts in this case are not in dispute.  The pivotal question involved is whether the adoption of Line A between Ottawa and its junction with Route 18 is an unwarranted departure from the route for which the bonds were voted and hence beyond the jurisdiction of the Department of Public Works and Buildings.  The evidence in the record and an examination of the plats offered in evidence show that a straight line from DeKalb to Ottawa passes through the village of Leland.

Section 9 of the act known as the Sixty Million Dollar Road Bond Issue act (Cahill's Stat. 1927, p. 2196,) provides as follows:  "That the general location of the routes upon and along which said proposed roads are to be constructed shall be substantially as described in this section, so as to connect, with each other, the different communities and the principal cities of the State:  Provided, however, that said Department of Public Works and Buildings shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of this act."  Forty-six routes are described and provided for by the act.  Route 23 is described as follows:  "Beginning in a public highway at the Wisconsin State line, north of Harvard and running along such highway in a general southerly and southwesterly direction to Streator, affording Harvard, Marengo, Sycamore, DeKalb, Ottawa, Streator and the intervening communities reasonable connections with each other."  Route 23 extends south and southwesterly from the Wisconsin State line to the northern boundary of LaSalle county, passing through or near Harvard, Marengo, Genoa, Sycamore and DeKalb.  The southern termination of Route 23 is at Streator.  Streator is 12½ miles west of the northern terminus of Route 23 at the Wisconsin State line and is 4½ miles west of the point where Route 23 intersects the boundary between LaSalle and DeKalb counties.  Leland is two miles west of the last mentioned point.  Leland is approximately

half way between the city of DeKalb and Ottawa, being 20½ miles south and two miles west of DeKalb and 18½ miles north and two miles east of Ottawa. Streator is almost directly south of Ottawa. The general direction of Route 23 from DcKalb to Ottawa is southwest. The city of Earlville is northwest of Ottawa, being 3¾ miles west and 16 miles north. The plat shows that Earlville lies 16 miles west of the point of beginning of Route 23 at the Wisconsin State line. It lies 8½ miles west of DeKalb. Leland lies two miles to the west of DeKalb and Earlville is 6½ miles west of Leland.

The record in the case shows, without dispute, that as to the communities of Baker, Harding, Serena, Wedron and Dayton no one going to Ottawa or Leland ever uses any portion of the road marked "Line A." The mandate of the statute as regards the construction of Route 23 is, that there shall be afforded to Harvard, Marengo, Sycamore, DeKalb, Ottawa, Streator "and the intervening communities" reasonable connection with each other. For the purpose of construing this act it is important to understand the meaning of the term "intervening communities." "Intervening" is defined by standard lexicographers as "that which lies between." For example, the St. Lawrence river intervenes between the United States and Canada. The term "community" is not susceptible of exact geographical definition but in a general way refers rather to people who reside in a given locality or neighborhood than to any geographical description of the territory in which they live. In *Gilman* v. *Dwight*, 13 Gray, (Mass.) 356, it was held that the term "the community" is to be interpreted according to the subject matter concerning which the term is used. In that case the court was construing an agreement by a physician to transfer his practice to another, by which agreement he was to refrain from competing with the purchaser unless the latter should forfeit the confidence of the community. The court held that "community" referred to the

people of the village and vicinity among whom the physician would be likely to practice. The term "community" has been defined in a case where the question involved was the reputation of a person in the community in which he resides, as referring to the reputation or estimate in which that person is held by his neighbors, associates or acquaintances living in the neighborhood. (*Cunningham* v. *Underwood,* 116 Fed. 803.) Regarding community high schools, it was held by this court in *People* v. *Baird,* 307 Ill. 503, that the term is to be construed in the light of school purposes and not as to other habits of the people living in a proposed district. To the same effect is *People* v. *Drennan,* 307 Ill. 482. This court in *People* v. *Young,* 301 Ill. 67, held that the term "community" refers rather to the people who reside in a given locality in more or less close proximity than to the territory which includes them, but that when applied to a high school district it has a meaning similar to that of neighborhood. To the same effect is *Keech* v. *Joplin,* 157 Cal. 1, 166 Pac. 222.

We are of the opinion that as used in the act under consideration here, an "intervening community" is intended by the legislature to mean persons living more or less in proximity, who for the purpose of travel between the principal cities mentioned on the routes defined would naturally select approximately the same route or general direction of travel. The reasonable connection to be secured by the State-wide system of hard roads is between the principal cities of the route defined and certain communities. Such communities are those which intervene or lie between the principal cities mentioned. To comply with the law the route must be so laid out. The Department of Public Works and Buildings has no jurisdiction to build hard roads unless this is done.

Section 1 of the Sixty Million Dollar Road Bond Issue act of 1917 (Cahill's Stat. 1927, p. 2195,) provides as follows: "That a State-wide system of durable, hard-surfaced roads be constructed by the State of Illinois, as soon as

practicable, upon public highways of the State along the hereinafter described routes, as near as may be," etc. Section 7 of the act provides: "Said Department of Public Works and Buildings shall construct upon and along said roads durable, hard-surfaced roadways which will in the judgment of the said Department of Public Works and Buildings and its chief highway engineer remain in good condition, with low reasonable maintenance cost, until after all of said State bonds have matured." The purpose of the act is shown by the language of section 1, requiring that the roads shall be constructed upon the public highways of the State along the certain routes described, as near as may be. While the act by section 9 gives the Department of Public Works and Buildings a right to make minor changes by re-location, if necessary, (*People* v. *Department of Public Works,* 320 Ill. 117,) yet the roads are to be constructed between the termini substantially upon the routes described, so as to afford the different other named cities and the communities intervening reasonable connection with the termini and with each other. (*Mitchell* v. *Lowden,* 288 Ill. 327; *People* v. *Department of Public Works, supra.*) The act confers upon the Department of Public Works and Buildings the power to make final decision affecting all rules and regulations for the proper management and conduct of said work and carrying out the provisions of the act for the best interest and advantage of the people of the State. The department does not, however, have unlimited discretion in the location of routes. (*MacGregor* v. *Miller,* 324 Ill. 113.) The act requires that the location of the routes be upon and along the highways substantially as described in the act. Where two highways are considered by the department, each of which comes within the purpose of the act to give a direct and practical connection between the cities named and affording to the intervening communities reasonable connection with each other and such principal cities,

the department is authorized to select either, as may appear to the best interest of the State.  *Stratton* v. *Henkel Construction Co.* 320 Ill. 526.

Considering Line A, therefore, under these rules of law, can it be said to afford reasonable connections with Ottawa, DeKalb and points north and south thereof to the communities lying between those cities?  It is argued by the appellees that Line A is more nearly the center of LaSalle county; that it costs less money to build and affords convenience to the communities of Meriden and Mendota, lying west of Earlville on Route 18, in their travel to Ottawa. But it is admitted in the evidence for appellees on the hearing that it would prove an inconvenience to the communities of Leland, Baker, Serena, Wedron and Dayton to travel over Line A to the village of Leland and points north or to Ottawa and points south and to the general public traveling north and south on Route 23.  The primary interest to be considered in the construction of the State-wide system of hard roads is that of the State at large and not the particular locality in which the road is built.  Neither the department, nor any officer connected therewith, has a right to consider local interest in conflict with the interest of the State at large as that interest is designated by the law. *MacGregor* v. *Miller, supra.*

While the construction of a route into the community of Earlville would doubtless give an added convenience to that community, yet the question which must be first determined is whether Earlville can be said to be an intervening community between DeKalb and Ottawa, within the meaning of the act.  It is 6½ miles west of the line between DeKalb and Ottawa.  To reach Ottawa from DeKalb or Leland by way of Earlville it is necessary to travel approximately four miles further.  The general direction of Route 23 is to the southwest.  The communities which lie between DeKalb and Ottawa are Leland, with a population of 588; Baker,

with 36; Harding, with 90; Serena, with 100; and Wedron and Dayton, population not shown. The communities of Mendota and Meriden lie further west of the line between DeKalb and Ottawa than does Earlville. Mendota has hard road connections by Routes 2 and 7 to Ottawa with practically the same mileage. The record shows that the most direct line between Leland and Ottawa is over what is known as the Plank road or the Ruger road, which roads are approximately a mile apart. The evidence shows that for more than fifty years that has been the established line of travel between Leland and Ottawa. While it can not in all cases be said that the department should follow the oldest established line of travel, yet the natural custom of people on the road is such that they will travel the most direct route, other things being equal, and the fact that a road has been the principally traveled route between two points for more than fifty years is evidence that it is the most direct and feasible route between those points. The evidence shows clearly that Earlville is not an intervening community between DeKalb and Ottawa. Nor is there any evidence whatever that the five communities between Leland and Ottawa herein named are a part of the community of Earlville for any purpose, but the evidence tends to prove the contrary. We are of the opinion, therefore, that Line A does not afford reasonable connections between DeKalb and Ottawa and the intervening communities of Leland, Baker, Harding, Serena, Wedron and Dayton.

Appellees have assigned cross-errors on the ruling of the circuit court holding invalid the act of the legislature approved June 16, 1927, (Laws of 1927, p. 775,) attempting to validate the act of the Department of Public Works and Buildings in selecting Line A. Section 1 of that act provides that the selection of Line A by the Department of Public Works and Buildings, all acts in relation to the letting of contracts for a hard-surfaced road over Line A, and all acts done in connection therewith, "are hereby de-

clared legal, valid and binding." Section 2 provides that all proceedings of every kind and character now pending in any court in the State based upon the alleged illegality of the action of the Department of Public Works and Buildings "are hereby declared void and of no validity." This act was passed as an emergency. Numerous grounds alleging the invalidity of this act are set forth in the briefs of counsel for appellant. The first is, that it is in violation of section 22 of article 4 of the constitution of Illinois, prohibiting the General Assembly from passing local or special laws for "laying out, opening, altering and working roads or highways." This act is so palpably in violation of this section that it needs no argument to demonstrate it, and the court did not err in holding it unconstitutional on that ground. This being so, the other grounds of unconstitutionality alleged against it need not be considered.

We are of the opinion that the construction of a hard-surfaced road along Line A is not in accordance with the provisions of section 9 defining Route 23, and not in accordance with the purposes of the State-wide system of hard roads as shown by the provisions of the statute, and that therefore the Department of Public Works and Buildings and its officers are without jurisdiction to so construct this road. The circuit court therefore erred in dismissing the bill for want of equity.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*