W. F. WILEY et al. Appellants, vs. THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS et al. Appellees.

*Opinion filed April 21, 1928—Rehearing denied June 12, 1928.*

1. HIGHWAYS—*State department is not required to follow existing highways in laying out hard road.* The Department of Public Works and Buildings is authorized to determine the public highways, between the specified termini, upon which the roads shall be constructed under the $100,000,000 Bond Issue act and is not restricted to the exact location of the existing highways, as the statute expressly authorizes the department to make minor changes in the location, and to secure, by purchase or condemnation, rights of way for such changes.

2. SAME—*what must be considered in laying out hard road.* In laying out a road under the Bond Issue acts the primary interest to be considered is that of the State at large and not of the particular locality in which the road is built, and the matter of accommodation, the cost of construction, expense to the traveling public and the element of safety in traveling over the road are proper elements to be considered.

APPEAL from the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding.

J. R. McMURDO, and P. K. JOHNSON, for appellants.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, of counsel,) for appellees.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This is an appeal from the circuit court of Sangamon county dismissing for want of equity a bill for an injunction filed by appellants seeking to restrain appellees from

letting contracts and building a part of Route 150 of the $100,000,000 Bond Issue act between Chester and Sparta upon the location selected therefor by appellees.

Appellants' bill, in addition to alleging various provisions of the $60,000,000 and the $100,000,000 Bond Issue acts and the designation of Route 150, alleged that there had been in use for more than fifty years a public highway running directly between Sparta and Chester known as the Sparta and Chester highway, and that, except for a parallel highway known as the Church highway for a small portion of the distance between these cities, the Sparta and Chester highway is the only through and direct highway traveled between them; that the portion of the highway involved in this suit is the part thereof from the city of Sparta to an intersecting highway known as the Shawneetown-Kaskaskia public highway, which intersection is located approximately seven miles southwest of Sparta, and that this portion consists of a reasonably straight road containing few turns and windings; that it is well graded and contains few hollows, ravines or hills of any magnitude; that upon this highway, located about five miles southwest of Sparta, is a community known as Blair, consisting of two stores, a blacksmith shop, one garage, three filling stations and two churches, with numerous residences, having a population of approximately one hundred people; that the Department of Public Works and Buildings has arbitrarily refused to hold a hearing as to the location of this portion of the road and has arbitrarily refused and failed to cause surveys to be made and levels taken of this highway and the Church road for the purpose of determining whether they can be properly used as a part of Route 150, and has arbitrarily located Route 150 from Sparta south along a highway to a re-location thereof for about seven miles to the intersection of a road running west about two and a quarter miles east of the Sparta and Chester road; that the cost of constructing a hard-surfaced road along the route designated

by the department, together with the cost of the remainder of Route 150 from the southerly end of this portion thereof to an intersection with the Chester and Sparta public highway, will be $100,000 greater than the cost of constructing it directly along the Sparta and Chester highway, with such minor changes as are necessary to comply with the provisions of the act; that the Department of Public Works and Buildings and its officers have arbitrarily located the road for the purpose of providing a hard-surfaced road for the cities of Steeleville, Percy, Cutler and other cities along a certain other road known as Route 151, and that none of these cities are communities between the cities of Sparta and Chester; that therefore they are arbitrarily departing from the route described by law for Route 150, to the irreparable injury of the intervening community of Blair and the other communities existing along and adjacent to the Chester and Sparta highway; that it was contemplated and stated by the General Assembly in the act that Route 150 should be constructed between the cities of Chester and Sparta on the highway known as the Chester and Sparta public highway, subject only to such minor changes of location as might be necessary to carry out the provisions of the act, and that it is the duty of the highway officials to construct the hard-surfaced road on the Chester and Sparta public highway as provided by such act.

Appellees answered the bill, denying that there is in existence and used a public highway running directly between Sparta and Chester known as the Sparta and Chester highway or that such highway is the only through and direct road used and traveled between those cities, and alleging that said highway runs indirectly and with many turns and bends between those cities; that other highways likewise run indirectly between them or part of the distance between them, and that each of said several highways has been used or traveled for many years by the public traveling between those cities; that they have not arbitrarily and without war-

rant of law decided upon the location but that they have had numerous conferences and discussions with the people who are interested in the location of the route, and that they are familiar with all of the local conditions and have exercised their best and most reasonable discretion and judgment in the location thereof for the best interests of the people of the State; that they have not aribtrarily refused or failed to cause surveys to be made and levels to be taken of other highways referred to in the bill, but that they have caused investigations and reconnaissance surveys to be made of the other roads and variations therefrom, and have fully considered the same in connection with the location of Route 150 from Sparta to Chester and have finally located the route pursuant to the provisions of the act; that the location of the route located by them will make the shortest and most feasible connection with Route 151 and will make such connection about two and one-third miles shorter than it would be to the road desired by appellants, and will thereby result in a saving of approximately the sum of $69,000 in the construction of the roads, will materially reduce the distance for traveling and will be particularly beneficial for the people desiring to use both routes; that from this intersection Route 150 will run in a southwesterly direction along a public highway for a distance of about two miles to its intersection with the Church road and thence in a southwesterly direction to the village of Bremen, where it will intersect and join with the Sparta and Chester road, running thence in a southerly direction to the city of Chester. The answer denied that the road as located will cost $100,000 more than if located on the route described by appellants, and alleged that it will result in a saving to the State of $69,000.

Chester, the county seat of Randolph county, a city of 3000 inhabitants, is situated six miles directly west of a point fifteen miles directly south of Sparta, which has a population of 3500. The evidence shows that there is no road

running directly from one city to the other. For over forty years there have been three or more roads used for travel between them, among them the road called by appellants the Sparta and Chester road, which starts at the southwest corner of Sparta and runs diagonally, with many turns and windings, in a southwesterly direction through Blair to Bremen and thence to Chester; the Church road, which branches off the Sparta and Chester road a short distance southwest of Sparta and runs thence south for about eight miles and thence to Bremen. Blair is about one mile west of this road. Another road, known as the Ridge road, runs directly south from Sparta and about seven miles therefrom connects with an east and west road which intersects the other two roads. The distance from the center of Sparta to Bremen by the two west roads is practically the same as over the route located by the department. The westerly of these roads is low for a portion of the way and impassable after rains, at which times travel is compelled to detour over one of the other roads. To build a hard-surfaced road in conformity with the standards of the department would require a five-foot fill for a distance of over 500 feet and the acquisition of 20 feet additional roadway. To utilize this road would require the building of three bridges over the St. Mary's river, while none would have to be erected on the road selected by the department. The Church road, while straighter and not so low as the westerly road, would require some fills and the erection of four bridges over the St. Mary's river, while the Ridge road, as its name indicates, is higher and does not cross the river. Instead of costing $100,000 more, as alleged in the bill, the building of the road on the route selected by the department would result in a saving of over $60,000.

It is contended by appellants that the department was required by the statute to locate Route 150 substantially on the highway running southwest from Sparta, through Blair to Bremen, regardless of the conditions on that road and

regardless of any other conditions. This road is not to be built under a special act providing solely for the road from Sparta to Chester for the benefit of those cities and the persons living on the road between them, but it is only a portion of Route 150, which is only one of 185 routes to be constructed under the Bond Issue acts for the purpose of creating, as stated in the acts, a State-wide system of durable, hard-surfaced roads. Route 150 is designated in the act as follows: "Beginning at Cairo and extending in a northerly direction to an intersection with Route No. 4 near Hamel affording Cairo, Thebes, McClure, Ware, Gorham, Chester, Sparta (running along Route No. 13 from Sparta to a point near Marissa), St. Libory, Fayetteville, Mascoutah, Lebanon, St. Jacob, Hamel and the intervening communities reasonable connections with each other." Route 151, a lateral connecting route, has its eastern terminus in Route 13 and its western at its intersection with Route 150 south of Sparta, and is described as follows: "Beginning as a point on Route No. 13 at or near Finney and extending in a northwesterly direction to an intersection with Route 150 south of Sparta (with a suitable connection to Cutler;) affording Finney, Oraville, Ava, Campbell Hill, Willisville, Percy, Cutler, Steeleville and the intervening communities reasonable connections with each other." It is evident from a reading of the statute creating these roads that it contains no language evidencing the intention of the legislature that Route 150 between Sparta and Chester should be located on the westerly of the three roads, but, on the contrary, a literal compliance with the language of the statute would require that it be located on the road selected by the department, as it is the only one of the three which can be intersected by Route 151 directly south of Sparta.

It is contended by appellants that the court erred in not allowing them to prove that the same location now fixed for Route 150 in question here was fixed a long time ago

as the location for Route 13 of the $60,000,000 Bond Issue act, and that the location was involved in litigation and changed for Route 13 to go straight east from Sparta. We fail to see how proof of these facts could throw any light on the question here in controversy.

Appellants assign as error that the court admitted evidence of the cost of two and a quarter miles of road from the intersection of the road as located with Route 151 to the westerly road. Appellants in their case in chief introduced evidence covering this same subject. The evidence was competent.

It is contended by appellants that the officials of the department have arbitrarily located the road without duly investigating and giving consideration to the two westerly roads. Evidence shows that the officials went over these two roads and made reconnaissance surveys, and after giving consideration to each of them were of the opinion that they were unfitted for the purposes of a durable, hard-surfaced road, and, after giving consideration to all the questions involved, determined that the location chosen was best fitted and most nearly met the requirements of the act.

The Bond Issue act fixed in a general way the routes upon which the roads are to be constructed by naming the termini, which were in some cases hundreds of miles apart, with no direct public highway running from one to the other and with many public highways intervening, and the power is delegated to the department to determine the exact public highways between the termini upon which the roads shall be constructed. (*Mitchell* v. *Lowden,* 288 Ill. 327.) The fact that the act expressly authorizes the commission to make minor changes in the location, and to secure, by purchase or condemnation, rights of way for such changes, plainly shows that the department was not intended to be restricted to the exact location of the existing highways in building a hard-surfaced road. (*People* v. *Department of Public Works,* 320 Ill. 117.) At the time many of the

highways were opened it is well known that no great pains or care was taken in selecting the location and that they followed winding Indian trails, and that engineering problems as to minimizing distance and added safety to rapid transit by reducing curves did not enter into the location of the roads. While the present location of Route 150 may be a disappointment to some of the people residing on or near the other roads, yet this route is a part of the State-wide system, and the primary interest to be considered is that of the State at large and not of a particular locality in which the road is built. *MacGregor* v. *Miller,* 324 Ill. 113.

The evidence shows that the greater portion of the traffic entering Sparta from the south is over the Ridge road. Route 150 as located by the department meets all the requirements of the statute, and the people of the State have been served to the best advantage, according to the evidence in this record, by its location. We think the Department of Public Works and Buildings has exercised a sound discretion and judgment in the selection of this road, because it appears that the road will accommodate more people and will cost the State less money than the other routes proposed. It will cost the traveling public less while traveling over the road and the route is a safer one for travelers. These elements are entitled to consideration. (*Stratton* v. *Henkel Construction Co.* 320 Ill. 526.) The Department of Public Works and Buildings having fairly considered the various routes proposed and having located the road according to its best judgment and not having acted arbitrarily in the premises, this court would not be warranted in interfering with its judgment.

The decree of the circuit court is affirmed.

*Decree affirmed.*