(No. 19473.—
WESLEY HAYES *et al.* Appellees, *vs.* THE DEPARTMENT OF
PUBLIC WORKS AND BUILDINGS *et al.* Appellants.

*Opinion filed October 19, 1929.*

OSCAR E. CARLSTROM, Attorney General, WARD P.
HOLT, State's Attorney, and CHARLES WHAM, (B. L.
CATRON, and ALBERT D. RODENBERG, of counsel,) for appellants.

JUNE C. SMITH, (WILLIAM G. MURPHEY, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellees, who are tax-payers of Marion county, filed their bill in the circuit court of that county against the Department of Public Works and Buildings, the director thereof, the superintendent of highways, the Auditor of Public Accounts, the State Treasurer and the county of Marion to enjoin them from locating Route 142 of the State Bond Issue act of 1923 from Kinmundy through Alma to Salem as established by the department, from acquiring the right of way therefor, from letting the contract for the construction of the road and from paying out the funds of the county or State in connection therewith. Answers were filed, the cause was heard by the chancellor in open court, a decree was entered in substantial compliance with the prayer of the bill, and an appeal has been prosecuted to this court.

The act of 1923 (Cahill's Stat. 1927, p. 2208,) describes Route 142 as follows: "Beginning at a point on Route No. 25 near Watson and extending in a southerly direction to Equality affording Watson, Mason, Edgewood, Farina, Kinmundy, Alma, Salem, Mt. Vernon, Opdyke, Belle Rive, Dahlgren, Delafield, McLeansboro, Broughton, Eldorado, Equality and the intervening communities reasonable connections with each other." Route 142 is between 175 and 200 miles long. The Illinois Central railroad extends in a straight line in a southwesterly direction from Kinmundy to Alma but does not extend to Salem, which is south and a little west of Alma. It is about twelve miles from Kinmundy to Salem, and Alma is about half way between them. The Chicago and Eastern Illinois railroad crosses the Illinois Central at the south corporate limits of Kinmundy and extends directly south from Kinmundy about four miles

and thence southwesterly to Salem. South of Kinmundy the Chicago and Eastern Illinois is east of the Illinois Central. The route selected by the department, and which will be referred to as the north route, extends directly through Kinmundy, Alma and Salem. It enters Kinmundy near the northeast corner of the city, east of the Chicago and Eastern Illinois. It extends west on a public street through a subway under the Chicago and Eastern Illinois, thence south on a public street about one-half a mile to the south city limits. It then continues south on a new right of way about half a mile to the Illinois Central; thence in a southwesterly direction along the north side of the railroad about three miles on a new right of way to a public highway; thence southwesterly on this public highway one mile through Alma and about a mile southwest of Alma on a public highway to Humes crossing, where there is to be an overhead crossing of the railroad; thence southwesterly, parallel with the railroad, about a mile on a new highway through section 13 to a public highway, and thence south on this public highway into Salem on Broadway street to the public square and court house.

There is a public highway extending south out of Kinmundy on the south side of the Illinois Central on which appellees contend the route should be located. It will hereafter be referred to as the south route. It crosses the Chicago and Eastern Illinois near the south corporate limits on a grade crossing. It then crosses the Illinois Central and runs in a southwesterly direction along the south side of this railroad about a mile, thence south about two miles, thence southwesterly about one-half mile, and thence west about one and three-fourths miles. From this point one highway extends west into Alma, while the other extends south about a mile, thence west one-half mile and thence southwesterly into Salem. It is insisted by appellees that there could be a subway under the Illinois Central on this route, but this is disputed by appellants.

Appellees state in their brief that the sole question involved is whether or not the location of the route as made by the Department of Public Works and Buildings, paralleling and adjacent to the right of way of the Illinois Central railroad from Kinmundy to a point three-fourths of a mile north of Alma, partly over a new location where no highway has ever existed, is a minor change which the department had authority to make, and whether the new road, one mile long, through section 13 southwesterly from Alma was also a minor change within the discretion of the department. In other words, it is claimed by appellees that the department in locating the various routes where hard roads are to be built is limited to existing highways and cannot open new roads where they are deemed necessary, and that neither the State nor the county can expend public funds for a new right of way.

The act of 1923 is entitled, "An act in relation to the construction by the State of Illinois of durable hard-surfaced roads upon public highways of the State along designated routes, and the provision of means for the payment of the cost thereof by an issue of bonds of the State of Illinois." Section 1 provides that "a State-wide system of durable hard-surfaced roads shall be constructed by the State of Illinois, as soon as practicable, upon public highways of the State, along the hereinafter designated routes, as near as may be." Section 9 provides that the general location of the routes upon and along which said proposed roads are to be constructed shall be substantially as designated in the section, so as to connect the different communities with each other in substantially the manner therein described. It provides that the department shall have the right to make such minor changes in the location of said routes as may become necessary in order to carry out the provisions of the act.

The statute does not designate the particular roads to be improved on Route 142. It specifies the limits of the

route, its general direction, and the cities, villages and communities to be served. The department is vested with authority to select the particular highways, within the limitations of the statute, which will best serve the public purposes intended. (*Wiley* v. *Department of Public Works,* 330 Ill. 312; *People* v. *Department of Public Works,* 320 id. 117; *Mitchell* v. *Lowden,* 288 id. 327.) The department does not have an unlimited discretion but only such as is provided by statute. (*Watts* v. *Department of Public Works,* 328 Ill. 587; *MacGregor* v. *Miller,* 324 id. 113.) It is the purpose and intent of the statute that existing public highways shall be improved as far as possible, but where the conditions are such that new highways have to be established in order to carry out the intent of the statute and best serve the public good, discretion is vested in the department to make such minor changes.

In *People* v. *Department of Public Works, supra,* this court approved the location of Route 3 on a new right of way along the north side of the Baltimore and Ohio railroad for about four and one-half miles to and through Virginia, in order to avoid two crossings over the railroad on the old highway and to afford greater safety to traffic.

In *MacGregor* v. *Miller, supra,* in order to avoid two grade crossings on the old highway over the Chicago and Alton railroad north and south of Pontiac, the department located the route on a new right of way along the west side of the railroad for about three miles to and through the city. It was contended that the statute required the improvement of the old road, and that the change involved a greater cost of construction because of new bridges and a new pavement in the city. It was held that by the terms of the statute it is left to the discretion of the department to select the safest, most direct and best routes, and that the expenditure of the amounts alleged for the elimination of grade crossings and right-angle turns in the business part of the city would not be an abuse of the discretion;

that the primary interest to be considered in the location of these roads is that of the State at large and not of the particular locality in which the road is built, and that the only right given to the people of a city or town designated on the route is the right of reasonable connection with other cities located upon the route.

In *Department of Public Works* v. *Spanogle,* 327 Ill. 122, the department located Route 40 north under the railroad in Milledgeville, and thence in a northwesterly direction on a new right of way along the north side of the railroad about two miles to the old highway. It was contended that the route must be located on one of two existing highways and could not be on a new right of way. It was held that the south highway would involve three turns and a viaduct over the railroad instead of a more convenient subway in the city, that the north road would involve three additional right-angle turns, greater distance and increased cost of construction and maintenance, and that the department had acted within its authority in locating the route on the new right of way.

In *Wiley* v. *Department of Public Works, supra,* on Route 150 under the act of 1923 one highway ran in a southwesterly direction from Sparta through Blair to Bremen, while another branched off from it about a mile south of Sparta and joined it at Bremen. A third highway ran south of Sparta three miles, thence in a southwesterly direction to a road running west from Steeleville. The department located the route on the highway running south from Sparta to a point where it turned east, thence in a direct line south on a new right of way for about four miles to the intersection with the road running west from Steeleville, and thence west to Bremen and Chester. It was contended that the route should be located on the main highway running southwest from Sparta through Blair to Bremen regardless of objectionable conditions, and that it could not be located on the new right of way. It was held

that power was delegated to the department to determine the exact location of the route and that it was not intended to restrict it to the exact location of existing highways; that the department had exercised a sound discretion in the selection of the route, because it appeared that it would accommodate more people, would cost less money and would be safer than any route proposed.

In this case the determination of the question as to whether the department was within the discretion conferred upon it by the statute depends upon the facts in evidence. It is possible to lay out this route entirely upon existing highways either north or south of the railroad, but considerable difficulty will be met in so doing. Alma is substantially three miles south and three miles west of Kinmundy. The railroad extends in a direct line southwesterly from Kinmundy to Alma. All existing highways on both routes extend east and west and north and south. To utilize either route on existing highways would require many right-angle turns and jogs in the road. The north route, by the use of three and one-half miles of new road, eliminates all jogs and turns, all railroad crossings, and makes a direct line between the two cities and extends through the center of Alma. The evidence shows that four-fifths of Alma is north of the railroad. All of its churches, schools, almost all of its business district and four-fifths of its houses are north of the railroad. On the north side of the railroad is a side-track a quarter of a mile long, from which many hundreds of cars of fruit are shipped annually. The side-track is adjacent to the main track of the railroad and the driveway for wagons is along the north side of the side-track. The railroad right of way on the north side is 100 feet wide. The highway north of the railroad right of way is 60 feet wide. The hard road will be 18 feet wide, located in the center of the highway. The space between the pavement and the loading track will be about 125 feet wide, and there will be from 75 to 100 feet of

space next to the highway for cars or wagons to stand, with ample room for turning from the side-track into the hard road in either direction. The north route extends directly to this point, while the south route makes no connection with Alma but misses it a quarter of a mile and could only be connected by means of a spur. From Alma to Salem the north route makes only one slight turn. North of Salem it connects with a ten-foot pavement about two miles long which leads directly into the business district of Salem. A part of this pavement will be widened and utilized and the county of Marion will be reimbursed about $8000 therefor.

It is insisted by appellees that the south route should be selected because it has been for many years the main traveled route from Kinmundy to Salem and that more people live along this route than along the north route. The evidence shows that for many years the south route was the main traveled route, but the evidence also shows that in recent years, since the concrete slab was built on the other road, the north road is the main traveled highway. There is evidence tending to show that at present about ninety per cent of the travel is over the north route. The south route has more houses along it than the north one, but the farms on the north route are larger and well improved and there is a substantial settlement along that route. If the road is built on the south route it will be one and two-tenths miles longer than the north route; there will be at least three right-angle turns; the road will not be straight; there will be at least one railroad crossing at grade and possibly two; the road will not pass through Alma by a quarter of a mile, and if a spur is built into the business district of Alma a third railroad crossing at grade will be made and seven-tenths of a mile more pavement required.

Evidence was offered by appellees tending to show that at a point near the pump-house of the Illinois Central, about

one-half mile south of Kinmundy on the south route, the railroad is on an embankment and a subway could be constructed under the railroad to eliminate the crossing. The evidence on behalf of appellants shows that the railroad company owns ninety-five acres of land on the north side of the railroad, extending one-half mile south of Kinmundy, on which a reservoir is located which supplies water for its engines. It would be necessary to obtain from the railroad company the right of way for this route and for the approaches to the subway. This reservoir originally had a capacity of eighty million gallons, but it has been decreased by washing and filling. The supply of water is limited in dry seasons. The railroad company consented to the location of the route along its right of way adjacent to the reservoir upon condition that the hard road would be so constructed that the spillway of the reservoir could be raised eight feet. The evidence shows that the present elevation of the embankment from the base of the rail to the top of the spillway is 24.46 feet. The grade of a hard road near a large body of water is usually about three feet above the water line. By raising the spillway this would leave about 13 feet below the base of the rail, or only 9 feet clearance from the bottom of the structure above the proposed subway to the top of the pavement. The evidence shows that 14 feet of clearance is required for a subway, or 18 feet from the bottom of the rail to the pavement of the road. This would make it almost impossible to construct a subway at this point. Evidence was also offered tending to show that it would be difficult to drain a subway at this point, and that in order to get a safe alignment for the approach it would be necessary for the route to swing away from the railroad 600 or 700 feet and cross an arm of the reservoir and a ravine which runs into it on the west side of the railroad. On the south side of the railroad the route would have to cross the present highway adjacent to the railroad and swing around on a

large curve to the southwest to get back to the highway at the point where it turns south.

The road south from Alma to Salem on the south route would run south about a mile, then jog east and thence southwesterly into Salem. The evidence shows that this road is partly through a rough, broken, timbered country. The road is winding. There are many ravines and some wide ditches, which would require culverts and bridges. At places the road has high banks and is so narrow that vehicles can barely pass. This pavement would run into the east side of Salem on Shelby street to the intersection of Route 12 on east Main street. To get to the court house it would be necessary to go west about one-half mile on Route 12. About 50 feet west of this corner is a bridge extending the full width of the street, with a sidewalk upon it, which would not leave sufficient distance to make a safe turn. Shelby street is about 40 feet wide. Its sidewalks are on high banks. Houses are built close to the sidewalk on one side and there is a cemetery on the other side. The width of the highway is about 20 feet, and it would be difficult or practically impossible to widen the street sufficiently for the route, which should be 60 feet wide to provide suitable width for the slab, with grading on each side and drainage.

The evidence shows that the cost of construction on the north route would be $66,072 less than the cost of construction on the south route. The north route is 1.02 miles shorter than the south route. The additional cost of grading from Alma to. Salem on the south route would be $11,700. The additional cost in bridge work, with concrete and steel, would be $13,775. The additional cost of seven-tenths of a mile of paving if the south route were extended across the railroad west into Alma would be $21,000.

There are other facts which might be mentioned, but these are sufficient to show that the department had just and reasonable grounds for locating the north route, and

that such location is for the best interests of the people of the State and comes within the jurisdiction of the department.

The board of supervisors of Marion county authorized its road and bridge committee to assist the State in obtaining the necessary right of way for the route and to expend not to exceed $3000 out of the funds of the county for that purpose. The committee obtained deeds or agreements for practically all of the right of way as located on the north route from Kinmundy to Salem except at the Humes corner and made payments or agreements for payments out of county funds. The bill alleged and the decree found that the county had no right to acquire such right of way and that no funds of the county could be lawfully expended for that purpose. In *McKean* v. *County of Carroll,* 324 Ill. 243, it was alleged that the county was about to expend large sums of money for right of way for Routes 27 and 40, and an injunction was asked to restrain the county from expending any of its funds for that purpose. Upon a hearing the bill was dismissed for want of equity and an appeal was prosecuted to this court. This court in its opinion referred to *Department of Public Works* v. *Caldwell,* 301 Ill. 242, in which it was held that there is no statute which forbids the department from accepting donations of land or money for right of way, and that there is no reason based on good morals or public policy for denying the department the right to accept such donations; that the interests of the people of the county might be subserved by the re-location of a road which the department would not feel justified in doing at public expense but would feel justified in so doing if the expense of the re-location was borne locally. It was held that the action of the county was within the corporate powers conferred upon it by law, and the court properly dismissed the bill for want of equity. The evidence in the present case shows that the board of supervisors of Marion county was justified in providing funds

244

for acquiring right of way. The location and construction of the hard road on the north route will not only be a substantial benefit to the cities and communities along the route in the county, but will also permit the county to receive a refund of over $8000 expended by the county in the construction of the road north of Salem.

The court was in error in entering the decree as prayed in the bill, and it will be reversed and the cause remanded, with directions to dismiss the bill.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*