(No. 21240.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* GEORGE H. CHALLAND *et al.*—(WILLIAM SPRAY *et al.* Appellants.)

*Opinion filed April 23, 1932.*

HIBBS & POOL, for appellants.

OSCAR E. CARLSTROM, Attorney General, HARLINGTON WOOD, LATHAM CASTLE, and H. W. PRENTICE, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Appellee, the Department of Public Works and Buildings, filed a petition in the county court of DeKalb county against George H. Challand and others to condemn certain land for highway purposes, including approximately seven acres belonging to William Spray and Maude R. Spray, appellants. The land sought to be taken is to be used as a part of the right of way for State Bond Issue Route 71, described as "beginning at Aurora and extending in a westerly direction to an intersection with Route No. 70, affording Aurora, Sugar Grove, Big Rock, Hinckley, Waterman, Shabbona and the intervening communities reasonable connection with each other." Appellants filed objections, alleging that it is not necessary, and appellee is without power or authority, to lay out and locate the route across appellants' lands; that there are other specified locations which should have been used by appellee in laying out and constructing the highway, and that approximately ten miles of it lying east of Shabbona was illegally constructed on right of way acquired over private property. The objections were overruled. A cross-petition was filed claiming damages to land not taken. Judgment was rendered on a verdict awarding damages, and this appeal is prosecuted by William Spray and Maud R. Spray from that judgment.

The only question urged for review is that the court erred in overruling the objections.

The hard-surfaced road is completed from Aurora to the center of Shabbona. From a point about half way between Aurora and Hinckley to a grade crossing about one-half mile east of Shabbona the highway runs along the north side of the Chicago, Burlington and Quincy railroad. From Hinckley west for approximately four miles it is laid out substantially on an existing public highway immediately north of the railroad track. This highway terminates at the range line between ranges 4 and 5, where it intersects a north and south road. From a point one-half mile south of the intersection another public road runs west along the section line to Route 70, touching the south limits of Waterman and Shabbona. For convenience this road will be referred to as the south road. There is another public road running west from the range line one mile north of the road last mentioned. This road will be referred to as the north road. It runs west to a point one-quarter of a mile east of Shabbona, touching the north line of Waterman. From the northwest corner of Shabbona this road continues west to a point about three miles east of Route 70. The north road and the south road parallel each other one mile apart. There are farm buildings and improvements along both roads. From the range line between ranges 4 and 5 to a point one-quarter of a mile east of Shabbona approximately six and one-half miles of Route 71 were constructed upon right of way acquired over private property. From the latter point to the center of Shabbona the road was constructed over existing streets and highways. At the western limits of Shabbona the main line of the railroad turns to the northwest, and a branch line goes southwest across the land of appellants in the southeast quarter of section 16. The controversy in this cause arises over that portion of Route 71 proposed to be constructed from the end of the existing pavement in the center of Shabbona west to the

west line of the village and thence southwesterly along the southeast side of the railroad through the land of appellants to the south road, a distance of approximately 1.39 miles. A street runs south from the center of the village and another runs south at the western limits. Both streets connect with the south road. A route over either of these streets is slightly longer than the route located by the department.

Appellants insist that Route 71 should go south from the range line to the south road, crossing the railroad either at grade or by overhead bridge, or that it should go north to the north road and proceed west along that road to Route 70, avoiding one railroad crossing, and that if either of those routes is used there would be no necessity for cross-· ing appellants' land, nor would any such necessity exist if the road is constructed on either of the streets in Shabbona leading to the south road. They also insist that the statute requires State bond issue routes to be constructed over existing highways, except for such minor changes as are necessary to avoid obstacles or dangers in operation; that the construction of a portion of the road between the range line and Shabbona over acquired right of way is unauthorized and unlawful; that the proposed extension through appellants' land is but a continuation of such unlawful location, and therefore it is also unauthorized and unlawful.

The testimony shows that if the street connecting the center of Shabbona with the south road is used it will be necessary to acquire three or four residences, a garage, part of an oil filling station and two barns; that it will cost approximately $8000 more to use either of the streets running south in Shabbona than to use the route through appellants' land; that the highway as located by the department has better alignment, safer curves and is more feasible and less hazardous than the routes proposed by appellants, and that it would not be advisable to construct an overhead crossing of the railroad at the range line east of Waterman because it would necessitate building a bridge twenty-six

or twenty-seven feet above the railroad, with heavy fills and long swinging curves for approaches.

If Route 71 had been located on the south road the traffic coming from the north on Route 23 and going east would be obliged to cross the Chicago, Burlington and Quincy railroad twice before reaching Sugar Grove, and if the route had been located along the north road it would be necessary to acquire about three and one-half miles of right of way over private property. The topography of that route is somewhat rough, and the location of the crossing over the Chicago, Burlington and Quincy railroad tracks, about two miles northwest of Shabbona, is not a feasible point for grade separation. The traffic over the branch line of that railroad where a crossing is proposed is not so heavy as it is on the main line, running northwest from Shabbona. There are two places between Hinckley and Shabbona where grade separation with the Chicago, Burlington and Quincy railroad may reasonably be effected. One of them is about a mile west of Waterman, where an overhead crossing can be made, and the other is about one-half mile east of Shabbona, where a subway can be constructed. The latter point is the one selected by appellee, and the testimony shows the present grade crossing is only temporary and that negotiations have been made with the railroad company for the construction of a subway.

The State Bond Issue act does not require highways to be constructed wholly on existing roads, regardless of dangers or unfavorable traffic conditions. The re-location of a portion of a road is such a change as is contemplated by the statute. (*Department of Public Works* v. *Epperson,* 333 Ill. 313.) The fact that the department is authorized to make minor changes in location, and to secure, by purchase or condemnation, rights of way for such changes, plainly shows that it was not intended to confine the department to the exact location of the existing highways in building a hard-surfaced road. (*People* v. *Department of*

*Public Works,* 320 Ill. 117.) Appellants knew for a long time where the road had been located by the department and knew of the construction of a large part of it, at a cost of many thousands of dollars. They are not now in a position to complain that the road was not properly located between Hinckley and Shabbona. *Stratton* v. *Henkel Construction Co.* 320 Ill. 526.

The location through appellants' land has an apparent advantage over either of the locations proposed by appellants, both in the cost of construction and in the matter of safety to the users of the highway. These elements are entitled to consideration. (*Stratton* v. *Henkel Construction Co. supra; Wiley* v. *Department of Public Works,* 330 Ill. 312.) Highways constructed under the State bond issue acts are not for present use, alone, but are for the needs of increasing traffic for many years. The Department of Public Works and Buildings is vested with a broad discretion in determining the amount of land to be taken and the location and kind of minor changes necessary to accomplish the purpose for which the highways are to be constructed. It is unquestionably more feasible for a State highway to pass through a community in a straight line than to make a right-angle turn in the center of such community. The department should anticipate the future needs of a municipality, and its action in the premises will not be interfered with except in a clear case of abuse of the discretion vested in it. The primary interest to be considered is that of the State and the traveling public. While this policy may, in instances, work some hardship to individuals, their rights and preferences must, as in all other governmental matters, be subject to and governed by the necessities of the people at large. The rule is, that where the right of eminent domain is granted, the question of when it may be exercised within its constitutional restriction is a legislative and not a judicial question, and its exercise is not a proper subject for judicial interference or control

unless to prevent a clear abuse of power. (*City of Chicago* v. *Sanitary District,* 272 Ill. 37; *Department of Public Works* v. *McGaughey,* 332 id. 416; *Mowry* v. *Department of Public Works,* 345 id. 121.) We find no such abuse in this case.

The record fails to show any ground sufficient to sustain appellants' objections. The order of the county court is therefore affirmed.

*Order affirmed.*